SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Habeeb Robinson (A-40-16) (078900)**

**Argued March 29, 2017 -- Decided May 10, 2017**

**RABNER, C.J., writing for a majority of the Court.**

In this appeal, the Court considers the newly enacted Criminal Justice Reform Act for the first time and addresses the type and scope of discovery the State must provide when it seeks to detain a defendant pretrial.

The Criminal Justice Reform Act (CJRA), N.J.S.A. 2A:162-15 to -26, has three principal components. First, it allows for pretrial detention of defendants who present such a serious risk of danger, flight, or obstruction that no combination of release conditions would be adequate. Second, it replaced the system's prior heavy reliance on monetary bail and instead calls for an objective evaluation of risk level and consideration of conditions of release. Finally, the Act establishes statutory speedy trial deadlines. The CJRA took effect on January 1, 2017.

N.J.S.A. 2A:162-18(a) authorizes the court to order pretrial detention if it finds by clear and convincing evidence that no conditions of release would reasonably assure a defendant's appearance in court, the safety of the community, and the integrity of the criminal justice process. A rebuttable presumption of detention exists when the court finds probable cause for murder or a crime subject to life imprisonment. N.J.S.A. 2A:162-19(b).

When a prosecutor applies for pretrial detention, the defendant is held pending a hearing. N.J.S.A. 2A:162-19(d)(2). "In pretrial detention proceedings for which there is no indictment, the prosecutor shall establish probable cause that the eligible defendant committed the predicate offense." N.J.S.A. 2A:162-19(e)(2). A defendant can rebut a presumption of detention, when one applies, by a preponderance of the evidence. Ibid. If a court orders detention, its decision must be supported by clear and convincing evidence. N.J.S.A. 2A:162-19(e)(3).

At the hearing, "the court may take into account": (a) "[t]he nature and circumstances of the offense charged; (b) [t]he weight of the evidence against the eligible defendant"; (c) the defendant's "history and characteristics"; (d) the danger posed by release; (e) the risk of obstruction of justice; "and (f) [t]he release recommendation" of the Public Safety Assessment (PSA) prepared under N.J.S.A. 2A:162-25. N.J.S.A. 2A:162-20.

After the Legislature enacted the CJRA, the Court asked the Criminal Practice Committee to propose amendments to the court rules. The Committee divided sharply about the amount and type of discovery that should be required for pretrial detention hearings. The Court struck a compromise: "if the prosecutor is seeking pretrial detention, the prosecutor shall provide the defendant with all statements or reports in its possession relating to the pretrial detention application. All exculpatory evidence must be disclosed." R. 3:4-2(c)(1)(B).

The police arrested defendant Habeeb Robinson for killing a victim. According to the affidavit, two eyewitnesses saw the shooting. One identified defendant from a six-person photo array; the other identified a photo of defendant. The Preliminary Law Enforcement Incident Report (PLEIR) adds that a surveillance camera recorded the incident. The pending complaint charges defendant with first-degree murder and weapons offenses. The PSA recommended that defendant not be released.

The State moved for pretrial detention. At the hearing, the State relied on the hearsay statements in the affidavit of probable cause (which refer to the two eyewitnesses); the presumption of detention under N.J.S.A. 2A:162-19(b)(1) (based on the murder charge); defendant's criminal history and record of court appearances; and the release recommendation in the PSA. The trial court directed the State to disclose the two witness statements, the photos used in the identification process, the surveillance video, and any incident report that the police prepared.

The Appellate Division affirmed the trial court's order. 448 N.J. Super. 501, 506 (App. Div. 2017). The Court agreed to hear the State's motion for leave to appeal on an accelerated basis.

**HELD**:  Both the trial court and the Appellate Division directed the State to disclose the statements of two eyewitnesses, photos used in the identification process, any incident report of the crime prepared by the police, and a surveillance video.  Rule 3:4-2(c)(1)(B) required disclosure of the reports and the photos but not the video.  The Court also clarifies and reframes the Rule to help ensure that it strikes the proper balance between two important concerns:  a defendant's liberty interest and the State's ability to seek to detain high-risk defendants before trial.

1.  Thoughtful people have wrestled over the scope of discovery that should be required at a detention hearing.  A number of considerations factor into the ongoing debate:  the language of the statute; important concerns for public safety; and the defendants' liberty interests.  In addition, the discovery rule should not impose impractical demands on law enforcement.  The administration of justice calls for fair and efficient proceedings.  In the case of a detention application, the focus is not on guilt, and the hearing should not turn into a mini-trial.  (pp. 26-29)

2.  To balance those aims, the Court sets forth principles to govern the disclosure of evidence at a detention hearing:  (1) because the Act calls for a determination of probable cause <u>and</u> an assessment of the risk of danger, flight, and obstruction, which may include consideration of the nature and circumstances of the offense and the weight of the evidence, discovery should likewise be keyed to both areas; (2) the complaint, (3) the PSA, (4) the affidavit of probable cause, and (5) any available PLEIR must be disclosed; (6) all statements and reports relating to the affidavit of probable cause should be disclosed; (7) all statements or reports that relate to any additional evidence the State relies on to establish probable cause at the detention hearing should be disclosed; (8) statements and reports related to items that appear only in the PLEIR need not be disclosed; (9) statements and reports relating to the risk of flight, danger, and obstruction, which the State advances at the hearing, should be disclosed; the phrase "statements and reports" (10) refers to items that exist at the time of the hearing and does not encompass video and audio files as a general rule, but does (11) encompass reports that are in the possession of the prosecutor, law enforcement officials, and other agents of the State; and (12) all exculpatory evidence must be disclosed.  (pp. 29-32)

3.  With those principles in mind, and based on the <u>Rule</u>'s practical application since January 1, 2017, the Court clarifies and revises <u>Rule</u> 3:4-2(c), effective at once.  The revisions are to be read with <u>Rule</u> 3:13-3, which obligates the State to provide full discovery when it makes a pre-indictment plea offer or when an indictment is returned or unsealed.  In appropriate cases, the prosecutor may apply for a protective order directly to the judge who will preside over the detention hearing.  If, after an extensive, long-term investigation, the State seeks permission to provide more limited discovery, judges may direct that a representative sample of statements and reports be disclosed before the detention hearing.  When the Court adopted the original <u>Rule</u>, it unanimously rejected the recommendation that videotapes be disclosed before a detention hearing.  The revised rule maintains that approach.  (pp. 32-36)

4.  The discovery rule—in its original and revised form—satisfies the requirements of due process and passes muster under the Federal and New Jersey Constitutions.  (pp. 37-40)

5.  Applying <u>Rule</u> 3:4-2(c), as clarified, to this case, any initial police reports about the witnesses must be disclosed, and the prosecution must provide copies of statements or reports of the two eyewitnesses.  When an eyewitness makes an identification, the State must document the process and record certain details.  That information should be disclosed along with copies of any photo arrays or photos used in the identification process.  Because photos shown as part of an identification receive special treatment under the law, their disclosure is an exception to the rule.  Neither the original nor the revised <u>Rule</u> calls for disclosure of surveillance videos and similar items.  (pp. 41-42)

The judgment of the Appellate Division is **AFFIRMED and MODIFIED**.  The revised <u>Rule</u> 3:4-2(c) shall go into effect at once.

**JUSTICE ALBIN, DISSENTING IN PART**, concurs in the judgment in this case based on the language of the then-operative Rule but dissents from the majority's decision to draft a new rule.  In Justice Albin's view, the redrafted Rule sanctifies artificial distinctions, making highly relevant evidence non-discoverable (a videotape) and second-hand evidence discoverable (written summary of tape).  The redrafted Rule also gives the prosecutor a perverse incentive to place information, not in the affidavit of probable cause, but rather in the PLEIR because reports and statements referenced in the PLEIR are non-discoverable.

**JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in CHIEF JUSTICE RABNER's opinion.  JUSTICE ALBIN filed a separate opinion, dissenting in part and concurring in part, in which JUSTICE LaVECCHIA joins.**

2

(c) <u>Procedure in Indictable Offenses</u>.  At the defendant's first appearance before a judge, if the defendant is charged with an indictable offense, the judge shall

> (1)    give the defendant a copy of the complaint, discovery as provided in subsections (A) and (B) below, and inform the defendant of the charge;

>> (A) if the prosecutor is not seeking pretrial detention, the prosecutor shall provide the defendant with a copy of any available preliminary law enforcement incident report concerning the offense and the affidavit of probable cause;

>> (B) if the prosecutor is seeking pretrial detention, the prosecutor shall provide the defendant with (i) the discovery listed in subsection (A) above, (ii) all statements or reports relating to the affidavit of probable cause, (iii) all statements or reports relating to additional evidence the State relies on to establish probable cause at the hearing, (iv) all statements or reports relating to the factors listed in <u>N.J.S.A.</u> 2A:162-18(a)(1) that the State advances at the hearing, and (v) all exculpatory evidence.

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

HABEEB ROBINSON,

    Defendant-Respondent.


        Argued March 29, 2017 – Decided May 10, 2017

        On appeal from the Superior Court, Appellate Division, whose opinion is reported at 448 N.J. Super. 501 (App. Div. 2017).

        Elie Honig, Director, Division of Criminal Justice, Office of the Attorney General, argued the cause for appellant (Christopher S. Porrino, Attorney General, attorney; Claudia Joy Demitro, Deputy Attorney General, of counsel and on the briefs).

        Joseph E. Krakora, Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Elizabeth C. Jarit, Assistant Deputy Public Defender, of counsel and on the briefs).

        Paul H. Heinzel, Somerset County Assistant Prosecutor, argued the cause for amicus curiae, County Prosecutors Association of New Jersey (Richard T. Burke, President, attorney).

        Alexander R. Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Edward L. Barocas, Legal Director, attorney; Alexander R. Shalom, Edward L. Barocas, and Jeanne M. LoCicero on the brief).

1

CHIEF JUSTICE RABNER delivered the opinion of the Court.

In this appeal, we consider the newly enacted Criminal Justice Reform Act for the first time and address the type and scope of discovery the State must provide when it seeks to detain a defendant pretrial.

The new law changed the landscape of the State's criminal justice system relating to pretrial release. The statute marked a shift away from heavy reliance on monetary bail. Judges now have the authority to detain defendants prior to trial if they present a serious risk of danger, flight, or obstruction. N.J.S.A. 2A:162-18(a)(1). Defendants who pose less risk can be released on their own recognizance or on conditions that pretrial services officers monitor. N.J.S.A. 2A:162-17, -25(d). The law also sets forth new speedy trial rules that apply to defendants who are detained. N.J.S.A. 2A:162-22.

In this case, defendant Habeeb Robinson was arrested on January 4, 2017 and charged with murder and weapons offenses. The State moved to detain him. In connection with the detention hearing, both the trial court and the Appellate Division directed the State to disclose the statements of two eyewitnesses, photos used in the identification process, any incident report of the crime prepared by the police, and a surveillance video.

We find that Rule 3:4-2(c)(1)(B), on which the courts relied, required disclosure of the reports and the photos but not the video. We also take this opportunity to clarify and reframe the Rule to help ensure that it strikes the proper balance between two important concerns: a defendant's liberty interest and the State's ability to seek to detain high-risk defendants before trial.

## I.

We begin with an overview of the Criminal Justice Reform Act (CJRA or Act), N.J.S.A. 2A:162-15 to -26, and certain related court rules to offer context for the discussion that follows.

## A.

Before this year, New Jersey had long guaranteed defendants the right to bail. The 1844 Constitution added a provision that had existed by statute for more than a century: "All persons shall, before conviction, be bailable by sufficient sureties, except for capital offences, when the proof is evident or presumption great." N.J. Const. of 1844, art. I, ¶ 10; see also State v. Johnson, 61 N.J. 351, 354 (1972). The 1947 Constitution retained the same language. N.J. Const. of 1947, art. I, ¶ 11 (2016).

Beginning in 2007, when the Legislature eliminated the death penalty for murder, see State v. Fortin, 198 N.J. 619, 624

(2009), the constitutional right to bail applied in all cases, see Report of the Joint Committee on Criminal Justice 18-19, 18 n.42 (Mar. 10, 2014), http://www.judiciary.state.nj.us/pressrel/ 2014/FinalReport_3_20_2014.pdf (JCCJ Report).

In practice, New Jersey's system of pretrial release relied heavily on the use of monetary bail "to insure [the] presence of the accused at the trial." Johnson, supra, 61 N.J. at 364. Defendants had to post cash or arrange for a bond to secure their release.

The system had direct consequences: any defendants -- even those who posed a substantial risk of flight or danger to the community -- could be released if they had access to untainted funds to post as bail. See N.J.S.A. 2A:162-13(b). Meanwhile, poorer defendants accused of less serious crimes, who presented minimal risk, were held in custody if they could not post even modest amounts of bail.

A March 2013 study of New Jersey's county jails revealed that twelve percent of inmates were in custody pretrial because they could not pay $2500 or less. Marie VanNostrand, Ph.D., Luminosity & the Drug Policy Alliance, New Jersey Jail Population Analysis 13 (Mar. 2013), https://university.pretrial. org/viewdocument/new-jersey-jail-popu. About 800 inmates "could have secured their release for $500 or less"; "an additional 259 inmates could have secured their release for between $501 and

4

$1,000[;] and an additional 489 inmates could have secured their release for between $1,001 and $2500." Ibid. In other words, one in eight inmates, who posed little risk, sat in jail pretrial because they were poor, while defendants charged with serious crimes who posed a substantial risk of danger or flight could be released into the community without monitoring so long as they could make bail.

A number of steps were taken in the past five years to address those system-wide problems. In 2012, Governor Christie called for a constitutional amendment to allow for pretrial detention in serious cases. Administrative Office of the Courts, Criminal Justice Reform: Annual Report to the Governor & Legislature 1 (2016), https://www2.njcourts.gov/courts/assets/criminal/2016cjrannual.pdf. The following year, the Judiciary established the Joint Committee on Criminal Justice, "comprised of members from all three branches of state government including the Attorney General, Public Defender, private attorneys, judges, court administrators, and representatives of the Legislature and the Governor's Office, to examine New Jersey's criminal justice system." Ibid. The Committee issued a report in March 2014, which recommended a series of changes to New Jersey's criminal justice system and focused, in particular, on bail reform and the need for a speedy trial act. See JCCJ Report, supra, at 1.

5

The Legislature held hearings to consider the Committee's findings and recommendations, and ultimately adopted a proposal to amend the State Constitution to permit detention

> if the court finds that no amount of monetary bail, non-monetary conditions of pretrial release, or combination of monetary bail and non-monetary conditions would reasonably assure the person's appearance in court when required, or protect the safety of any other person or the community, or prevent the person from obstructing or attempting to obstruct the criminal justice process.
>
> [S. Con. Res. No. 128, 216th Leg. (2014).]

The Legislature also drafted a bill, S. 946/A. 1910 (2014), discussed in detail below, to reform the system of pretrial release and provide for more timely trials for defendants who are detained. Governor Christie signed the new law on August 11, 2014. L. 2014, c. 31 (codified at N.J.S.A. 2A:162-15 to -26).

The Criminal Justice Reform Act has three principal components. First, it allows for pretrial detention of defendants who present such a serious risk of danger, flight, or obstruction that no combination of release conditions would be adequate. N.J.S.A. 2A:162-18(a)(1). Second, the Act replaced the system's prior heavy reliance on monetary bail. The law instead calls for an objective evaluation of each defendant's risk level and consideration of conditions of release that pretrial services officers will monitor. N.J.S.A. 2A:162-17, -

6

25(d). In that way, low-level offenders will not be penalized because they cannot afford to post bail. Finally, the Act establishes statutory speedy trial deadlines for defendants who are detained pending trial. N.J.S.A. 2A:162-22.

The law was contingent on passage of the proposed constitutional amendment, which voters approved by a wide margin of 61.8 to 38.2 percent in November 2014. Div. of Elections, Dep't of State, Official List: Public Question Results for 11/04/2014 General Election Public Question No. 1 1 (Dec. 2, 2014), http://nj.gov/state/elections/2014-results/2014-official-general-public-question-1.pdf.

The Criminal Justice Reform Act took effect on January 1, 2017. N.J.S.A. 2A:162-15 to -26. We summarize its provisions and focus in particular on parts of the law that relate to pretrial detention.

The Act "shall be liberally construed" to effect its purpose: to rely primarily on "pretrial release by non-monetary means to reasonably assure" that a defendant will "appear[] in court when required," will not endanger "the safety of any other person or the community," and "will not obstruct or attempt to obstruct the criminal justice process." N.J.S.A. 2A:162-15. If a court finds by clear and convincing evidence that "no condition or combination of conditions" would achieve those

goals, the court, upon motion by the prosecutor, may order that a defendant be held pending trial.  Ibid.

A court may set monetary bail "only when . . . no other conditions of release will reasonably assure the eligible defendant's appearance in court."  Ibid.  The statute defines "eligible defendant" as a person initially charged in a complaint-warrant with an indictable offense or a disorderly persons offense, unless otherwise stated.  Ibid.

After a complaint-warrant is issued, eligible defendants "shall be temporarily detained to allow the Pretrial Services Program to prepare a risk assessment" and recommend conditions of release.  N.J.S.A. 2A:162-16(a); see also N.J.S.A. 2A:162-25. Within 48 hours of a defendant's commitment to jail, the court must "make a pretrial release decision."  N.J.S.A. 2A:162-16(b)(1).  Defendants who are released must receive notice of any conditions imposed and the consequences for violating them. N.J.S.A. 2A:162-23(a)(1); see also N.J.S.A. 2A:162-24 (noting process for violations).

The CJRA outlines a hierarchy of release decisions to assure a defendant's return to court and protect both public safety and the integrity of the criminal justice process:  (i) release on personal recognizance or an unsecured appearance bond, N.J.S.A. 2A:162-16(b)(2)(a), -17(a); (ii) if that is inadequate, release on non-monetary conditions that are the

8

least restrictive conditions necessary, N.J.S.A. 2A:162-16(b)(2)(b), -17(b); (iii) if that is inadequate, release on monetary bail -- but only to reasonably assure the defendant's appearance in court, N.J.S.A. 2A:162-16(b)(2)(c), -17(c); (iv) if that is inadequate, release on both monetary and non-monetary conditions, N.J.S.A. 2A:162-16(b)(2)(c), -17(d); and (v) if that is inadequate and the prosecutor has moved for pretrial detention, order that the defendant remain detained pending a pretrial detention hearing, N.J.S.A. 2A:162-16(b)(2)(d).

Sections 18 to 20 of the Act set forth procedures for pretrial detention hearings, N.J.S.A. 2A:162-18 to -20, and are discussed in the following section.

The Act's speedy trial deadlines appear in section 22. Except for "excludable time for reasonable delays," defendants cannot remain in jail for more than 90 days before the return of an indictment, or more than 180 days after indictment and before the start of trial. N.J.S.A. 2A:162-22(a)(1)(a), (a)(2). The statute lists thirteen periods of excludable time, N.J.S.A. 2A:162-22(b), and sets an outer limit of two years for pretrial detention in a single matter, aside from any delays attributable to the defendant. N.J.S.A. 2A:162-22(a)(2)(a), (a)(2)(c); see also R. 3:25-4(d).

Section 25 establishes a Pretrial Services Program. Among other responsibilities, pretrial services officers prepare a

9

risk assessment for each defendant for the court's use, N.J.S.A. 2A:162-25(b), (c), and monitor defendants who are released on conditions, N.J.S.A. 2A:162-25(d).

In many respects, the text of the Criminal Justice Reform Act follows the federal Bail Reform Act of 1984, 18 U.S.C.A. §§ 3141 to 3156, and the District of Columbia's statutory scheme for pretrial detention, D.C. Code. §§ 23-1321 to -1333. As State Senator Norcross, one of the Act's sponsors, noted at a public hearing, the Legislature looked to both laws among others when it framed New Jersey's reform measure. Pub. Hearing Before S. Law & Pub. Safety Comm., S. Con. Res. 128 2 (2014). The CJRA, however, contains additional safeguards for pretrial detention hearings. We turn to those now.

B.

Several sections of the Criminal Justice Reform Act are critical to this appeal: N.J.S.A. 2A:162-18, -19, and -20.

Section 18(a) authorizes the court to order pretrial detention if it finds by clear and convincing evidence that no conditions of release would reasonably assure a defendant's appearance in court, the safety of the community, and the integrity of the criminal justice process. N.J.S.A. 2A:162-18(a).

Prosecutors may seek detention when an eligible defendant is charged with:

10

(1) any crime of the first or second degree enumerated under [N.J.S.A. 2C:43-7.2(d)];

(2) any crime for which the eligible defendant would be subject to an ordinary or extended term of life imprisonment;

(3) any crime if the eligible defendant has been convicted of two or more offenses under paragraph (1) or (2) of this subsection;

(4) any crime enumerated under [N.J.S.A. 2C:7-2(b)(2)] or crime involving human trafficking pursuant to [N.J.S.A. 2C:13-8] or [N.J.S.A. 52:17B-237 et al.] when the victim is a minor, or the crime of endangering the welfare of a child under N.J.S.A. 2C:24-4;

(5) any crime enumerated under N.J.S.A. 2C:43-6(c);

(6) any crime or offense involving domestic violence as defined in [N.J.S.A. 2C:25-19(a)]; or

(7) any other crime for which the prosecutor believes there is a serious risk that:

> (a) the eligible defendant will not appear in court as required;
>
> (b) the eligible defendant will pose a danger to any other person or the community; or
>
> (c) the eligible defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure or intimidate, a prospective witness or juror.

[N.J.S.A. 2A:162-19(a).]

A rebuttable presumption of detention exists when the court finds probable cause for two categories of offenses:  murder,

11

under N.J.S.A. 2C:11-3, or a crime that would subject a defendant to life imprisonment. N.J.S.A. 2A:162-19(b).

When a prosecutor applies for pretrial detention, the defendant is held pending a hearing. N.J.S.A. 2A:162-19(d)(2). The hearing must take place no later than the defendant's first appearance or within three days of the prosecutor's motion. N.J.S.A. 2A:162-19(d)(1). The court may grant a continuance of up to three days upon the prosecutor's request or up to five days at the defendant's request. Ibid.

At the hearing, the defendant has the right to counsel and, if indigent, to court-appointed counsel. N.J.S.A. 2A:162-19(e)(1). The defendant also has the right to testify, to call witnesses, to cross-examine witnesses who appear, and to present information by proffer or otherwise. Ibid.

Of particular note in this appeal, "[i]n pretrial detention proceedings for which there is no indictment, the prosecutor shall establish probable cause that the eligible defendant committed the predicate offense." N.J.S.A. 2A:162-19(e)(2). In that way, the CJRA differs from federal law, which does not require the government to establish probable cause to prevail on a motion for pretrial detention. See 18 U.S.C.A. § 3142(e)(1).

A defendant can rebut a presumption of detention, when one applies, by a preponderance of the evidence. N.J.S.A. 2A:162-19(e)(2). If the defendant succeeds, the prosecution may seek

12

to establish that detention is warranted. Ibid. In the end, if a court orders detention, its decision must be supported by clear and convincing evidence. N.J.S.A. 2A:162-19(e)(3). The court may reopen the hearing to consider new and material evidence. N.J.S.A. 2A:162-19(f).

At the hearing itself, "the court may take into account" the following:

>    a. The nature and circumstances of the offense charged;
>
>    b. The weight of the evidence against the eligible defendant, except that the court may consider the admissibility of any evidence sought to be excluded;
>
>    c. The history and characteristics of the eligible defendant, including:
>
>    > (1) the eligible defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>    >
>    > (2) whether, at the time of the current offense or arrest, the eligible defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state;
>
>    d. The nature and seriousness of the danger to any other person or the community that would be posed by the eligible defendant's release, if applicable;

e. The nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the eligible defendant's release, if applicable; and

f. The release recommendation of the pretrial services program obtained using a risk assessment instrument under [N.J.S.A. 2A:162-25].

[N.J.S.A. 2A:162-20 (emphases added).]

If a court orders a defendant detained pretrial, the judge must "include written findings of fact and a written statement of . . . reasons" in an order. N.J.S.A. 2A:162-21(a). If a judge instead authorizes a defendant's release, "contrary to a recommendation made in a risk assessment," "the court shall provide an explanation" in the order of release. N.J.S.A. 2A:162-23(a)(2) (requiring explanation whenever court enters order contrary to recommendation in PSA). A defendant has the right to file an appeal from a detention order, which "shall be heard in an expedited manner." N.J.S.A. 2A:162-18(c).

C.

After the Legislature enacted the Criminal Justice Reform Act, the Court asked the Criminal Practice Committee to propose amendments to the court rules. That able Committee is comprised of judges, representatives of the Attorney General and the Public Defender, county prosecutors, and private counsel. The Committee recommended dozens of rule changes to implement the

14

new law.  See Report of the Supreme Court Committee on Criminal Practice on Recommended Court Rules to Implement the Bail Reform Law, Part I:  Pretrial Release (CPC Report I) (May 9, 2016), http://njcourts.gov/reports2016/bailreform.pdf, & Part II: Pretrial Detention & Speedy Trial (May 12, 2016), http://njcourts.gov/reports2016/bailreformlaw.pdf.  The Committee divided sharply about the amount and type of discovery that should be required for pretrial detention hearings.

The Committee's recommendation called for broad discovery: "if the prosecutor is seeking pretrial detention, the prosecutor shall provide all relevant material in its possession that would be discoverable at the time of indictment as set forth in paragraph (a) of Rule 3:13-3."  CPC Report I, supra, at 46.  The Committee also acknowledged that "[t]here were strong concerns raised about the nature of a detention hearing, and that it is supposed to be limited in scope.  Some members noted that it would be overly burdensome for prosecutors to be required to provide 'complete' discovery . . . ."  Id. at 51.

In a dissent to the Committee's recommendation, the Attorney General asserted that the proposed rule "would signal to the bench and bar that a defendant may probe and contest the State's case-in-chief at a detention hearing as if it were a trial to decide guilt or innocence."  Office of the Attorney General, Dissent to Proposed Rule 3:4-2(c)(1)(b) Governing

15

<u>Discovery for Pretrial Detention Hearings</u> 2 (May 4, 2016),
<u>reprinted in</u> <u>CPC Report I</u>, <u>supra</u>, at 109.  The Attorney General
advocated for the narrower rule that Judge Martin Cronin, a
Committee member, had initially recommended.  <u>Id.</u> at 1,
<u>reprinted in</u> <u>CPC Report I</u>, <u>supra</u>, at 108.  They proposed the
following language:  "if the prosecutor is seeking pretrial
detention or release revocation, the prosecutor shall provide
the defendant with all statements or reports in its possession
that relate to the facts upon which the prosecutor relies in
these motions."  <u>Id.</u> at 5, <u>reprinted in</u> <u>CPC Report I</u>, <u>supra</u>, at
112.

The Public Defender challenged the dissent's formulation
and argued that "[i]t would permit the State to withhold
evidence that is arguably exculpatory or that the defense could
use to demonstrate weaknesses in the case."  Office of the
Public Defender, <u>Comments on Part I Proposed Rules</u> 2 (Apr. 27,
2016), <u>reprinted in</u> <u>CPC Report I</u>, <u>supra</u>, at 107.

The Court struck a compromise and adopted a rule closer to
the dissent's proposal:  "if the prosecutor is seeking pretrial
detention, the prosecutor shall provide the defendant with all
statements or reports in its possession relating to the pretrial
detention application.  All exculpatory evidence must be
disclosed."  <u>R.</u> 3:4-2(c)(1)(B).

16

Rule 3:4-2(c)(1)(B) guarantees far broader discovery than federal law does. The Bail Reform Act of 1984 has no discovery provision. Consistent with the Jencks Act, the government is obligated to disclose witness statements only after a witness testifies at a hearing. See 18 U.S.C.A. § 3500; see also Fed. R. Crim. P. 26.2, 46(j). Similarly, the ABA's model standards for pretrial detention hearings call for disclosure of exculpatory evidence only. ABA Standards for Criminal Justice: Pretrial Release § 10.5-10(c) (3d ed. 2007).

For non-detention cases, by contrast, the Court adopted a new rule that calls for more limited disclosure of "a copy of any available preliminary law enforcement incident report [PLEIR] concerning the offense and any material used to establish probable cause." R. 3:4-2(c)(1)(A).

The PLEIR is "an electronic document that succinctly describes the relevant factual circumstances" relating to a defendant's arrest. Office of the Attorney General, Directive Establishing Interim Policies, Practices, and Procedures to Implement Criminal Justice Reform Pursuant to P.L. 2014, c. 31 § 5.2, at 48 (Oct. 11, 2016), http://www.state.nj.us/lps/dcj/agguide/directives/2016-6_Law-Enforcement.pdf. PLEIRs are designed to enable law enforcement officers to prepare them quickly and easily. Id. at 49. The electronic form lists "commonly occurring facts and circumstances" that officers may

17

select, including whether law enforcement officers or other eyewitnesses observed the offense, whether the defendant made a recorded admission, what type of weapon was involved, and whether any physical evidence was recovered, among other things. Id. at 49-51. The Administrative Office of the Courts (AOC) developed a form that states that the PLEIR "is designed to be appended to, and is expressly incorporated by reference in, the affidavit of probable cause."

In addition, the CJRA specifically calls for the use of a "risk assessment instrument approved by the" AOC. N.J.S.A. 2A:162-25(c). Pretrial services officers use the device "to prepare a risk assessment with recommendations on conditions of release . . . and for the court to issue a pretrial release decision." N.J.S.A. 2A:162-16(a).

To prepare for the onset of the CJRA, the Judiciary worked with the Laura and John Arnold Foundation to develop an objective risk-assessment tool. The tool is designed to measure two types of risk: whether a defendant will fail to appear for court proceedings and whether he or she will engage in new criminal activity while on release. The tool considers nine factors: (1) the defendant's age at the time of the current offense; (2) whether the offense is violent and, if so, whether the defendant is age 20 or older; (3) any additional pending charge(s) at the time of the current offense; and whether the

18

defendant has any prior (4) disorderly persons convictions, (5) indictable convictions, (6) violent convictions, (7) failures to appear pretrial in the past two years or (8) more than two years ago, or (9) sentences of incarceration of fourteen days or more.

Within hours of an arrest, pretrial services officers gather this and other relevant information about each eligible defendant to prepare a "Public Safety Assessment" (PSA). N.J.S.A. 2A:162-16(a), (b)(1). The PSA assesses the level of risk for failure to appear and for new criminal activity on a scale of 1 to 6, with 6 being the highest, and may include a flag to denote new violent criminal activity. The PSA also recommends whether to release a defendant and what, if any, conditions of release to impose. The court can use a recommendation against release as "prima facie evidence sufficient to overcome the presumption of release." R. 3:4A(b)(5).

Trial judges consider the PSA but make the ultimate decision on release after reviewing other relevant information as well. See N.J.S.A. 2A:162-20.

Against that backdrop, we turn to the facts of this case and the parties' arguments.

II.

Based on a complaint and a supporting affidavit of probable cause, the police arrested defendant Habeeb Robinson for

19

shooting and killing a victim on December 25, 2016. According to the affidavit, two eyewitnesses saw the shooting. One identified defendant from a six-person photo array; the other identified a photo of defendant. The affidavit does not name either witness and states that both wish "to stay anonymous out of fear." The PLEIR adds that a surveillance camera recorded the incident.

The pending complaint charges defendant with first-degree murder, N.J.S.A. 2C:11-3(a)(1); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1).

Pretrial Services prepared a Public Safety Assessment for defendant on January 5, 2017, one day after his arrest. The PSA rates defendant 3 out of 6 for risk of flight and 4 out of 6 for new criminal activity; it also flags defendant for "new violent criminal activity." According to the PSA, defendant has prior convictions for disorderly persons offenses, indictable offenses, and prior violent offenses. He has been sentenced to prison for more than fourteen days on three prior occasions. He also failed to appear in court three times in 2004 and 2005. The PSA recommended that defendant not be released.

The State moved for pretrial detention, and the court scheduled a hearing for January 10, 2017. Before the hearing,

the State disclosed the complaint-warrant, the affidavit of probable cause, an affidavit in support of the arrest warrant, the PSA, and the PLEIR.  The PLEIR briefly refers to seven types of relevant information:  recorded statements by eyewitnesses; a recording from a surveillance camera; the fact that defendant and the victim were strangers; the use of a handgun; ballistics evidence; a 9-1-1 call; and a consent search.  The surveillance video was from a private security camera.  State v. Robinson, 448 N.J. Super. 501, 517 n.7 (App. Div. 2017).  The State also disclosed defendant's exculpatory statement to the police in which he denied that he was involved in the shooting.

At the hearing, the State relied on the hearsay statements in the affidavit of probable cause (which refer to the two eyewitnesses); the presumption of detention under N.J.S.A. 2A:162-19(b)(1) (based on the murder charge); defendant's criminal history and record of court appearances; and the release recommendation in the PSA.  The State argued that all three grounds set forth in the statute -- risk of flight, danger, and obstruction -- justified pretrial detention.  See N.J.S.A. 2A:162-18.

Defense counsel requested additional discovery.  After hearing argument from the parties, the trial court rejected the State's view of Rule 3:4-2(c)(1)(B) and ordered it to turn over "any discovery in [its] possession that the State is relying

21

upon for [the] pretrial detention hearing." In particular, the trial court directed the State to disclose the two witness statements referred to in the affidavit, the photos used in the identification process, the surveillance video, and any incident report of the crime that the police prepared. The court granted the prosecutor's request to stay the order.

The Appellate Division granted the State's motion for leave to appeal and later affirmed the trial court's order. Robinson, supra, 448 N.J. Super. at 506.

The panel did a careful and thorough review of the CJRA and the history of Rule 3:4-2(c)(1)(B). Id. at 509-15. The court focused in particular on the part of the Rule that requires the prosecution to disclose all statements and reports in its possession "relating to the pretrial detention application." Id. at 504. The panel interpreted the phrase to mean that the prosecutor must "provide a defendant with those materials in the State's possession that relate to the facts on which the State bases its pretrial detention application." Id. at 519-20.

The panel agreed with the trial court that a defendant is entitled to the factual materials themselves "and not merely the hearsay description of those materials set forth in the probable cause affidavit and the PLEIR." Id. at 505. As a result, the panel concluded that the State had to turn over the witness statements described in the affidavit of probable cause, the

22

identification photos, the surveillance video listed in the PLEIR, and any initial police reports of the crime.  Id. at 506, 517.  The panel noted that those materials relate to both probable cause and the weight of the evidence, which the court may consider under N.J.S.A. 2A:162-20(b).  Id. at 505-06.  The panel also explained that materials in the possession of the police are in the prosecutor's possession for discovery purposes.  Id. at 507.

The panel reasoned "that the very limited discovery for which the State advocates could deny a defendant a fair opportunity to defend against the State's application, and could hamper the trial court's ability to fairly assess the nature and circumstances of the offense and the weight of the evidence." Id. at 518 (citing N.J.S.A. 2A:162-20(a), (b)).

We agreed to hear the State's motion for leave to appeal on an accelerated basis.  The Court denied the State's motion for a stay but preserved its right to obtain review of a "recurring issue of great public importance" that "would otherwise evade review."

The Office of the Attorney General superseded the Essex County Prosecutor and now represents the State on appeal.  The American Civil Liberties Union of New Jersey (ACLU) appeared as amicus curiae before the Appellate Division and has continued to participate in this appeal.  See Rule 1:13-9(d).  We also

23

granted the County Prosecutors Association of New Jersey leave to appear as amicus.

                                    III.

The State contends that the appellate panel ignored the plain language and history of Rule 3:4-2(c)(1)(B), that its decision will inappropriately expand the scope of detention hearings and make compliance extremely onerous for prosecutors, and that due process does not require broad discovery at detention hearings. At oral argument, the State asserted that it was sufficient in this case to disclose the affidavit of probable cause and the PLEIR, and not the underlying documents to which they refer.

The County Prosecutors Association shares the State's concerns. The Association argues that the Appellate Division grievously misinterpreted the reach of the Rule, which the Association claims imposes a far more limited discovery obligation.

Defendant submits that the Appellate Division's decision comports with the Rule and should be affirmed. He argues that the ruling will not turn detention hearings into mini-trials and does not create a burdensome standard. Defendant also claims that the State's interpretation of the Rule would violate due process.

The ACLU agrees with defendant's view of the State's discovery obligations and supports the appellate ruling. The group adds that the Rule encompasses information in the possession of law enforcement officers. The ACLU also claims that the State's reliance on hearsay at a detention hearing does not relieve it of the responsibility to supply underlying statements or reports in its possession.

IV.

The trial court and Appellate Division interpreted Rule 3:4-2(c)(1)(B) to require the disclosure of reports and a surveillance video. Our review of the meaning of a court rule is de novo. State v. Hernandez, 225 N.J. 451, 461 (2016).

A.

For convenience, we recite the text of the Rule again: "the prosecutor shall provide the defendant with all statements or reports in its possession relating to the pretrial detention application. All exculpatory evidence must be disclosed." R. 3:4-2(c)(1)(B).

We apply ordinary principles of statutory construction to interpret the court rules and start with the plain language of the Rule. Wiese v. Dedhia, 188 N.J. 587, 592 (2006). Rule 3:4-2(c)(1)(B) calls for discovery of "statements or reports," not videos. We therefore conclude that disclosure of the surveillance video was not required. For reasons that follow,

25

we agree that the other items should be disclosed.  We also clarify the role that the PLEIR should play in future discovery decisions.

Thoughtful people have wrestled over the scope of discovery that should be required at a detention hearing.  As noted earlier, the members of the Criminal Practice Committee sharply divided on that issue, and the Court compromised among different positions when it adopted Rule 3:4-2(c)(1)(B).

A number of considerations factor into the ongoing debate. The language of the statute is the proper starting point. Although the new law is silent on the question of discovery, several sections help frame the discussion.

Under the CJRA, the prosecutor must "establish probable cause that the eligible defendant committed the predicate offense" at a detention hearing.  N.J.S.A. 2A:162-19(e)(2).  The trial court must also determine whether there are no conditions that "would reasonably assure" the "defendant's appearance in court," "the protection of the safety of any other person or the community, or that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process."  N.J.S.A. 2A:162-20.  To make that assessment, the court may consider information about "[t]he nature and circumstances of the offense charged" and "[t]he weight of the evidence against the eligible defendant."  N.J.S.A. 2A:162-20(a), (b).

26

The statute, thus, requires both some proof about the crime -- sufficient to establish probable cause -- and proof relating to the risk of flight, danger, or obstruction.  In cases where detention is presumed, N.J.S.A. 2A:162-19(b), factors relevant to those risks can still play a role in the defendant's rebuttal or the prosecution's response, N.J.S.A. 2A:162-19(e)(2).

In addition to the guidance we find in the Act, the scope of the discovery rule in detention cases must reflect what is at stake.  Balanced against important concerns for public safety are the defendants' liberty interests.  As Chief Justice Rehnquist observed in a related context, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  United States v. Salerno, 481 U.S. 739, 755, 107 S. Ct. 2095, 2105, 95 L. Ed. 2d 697, 714 (1987).

To be sure, defendants who must report to pretrial services officers are inconvenienced.  But defendants who are detained pretrial face a complete loss of liberty.  Rule 3:4-2(c)(1) therefore requires broader discovery in detention cases than in non-detention cases, so that a person who is accused of a crime and subject to possible detention is better able to challenge the State's application and presentation.

Another important consideration is self-evident.  A discovery rule should set forth a workable standard.  In light

of the law's tight timeframe, N.J.S.A. 2A:162-19(d), the rule should not impose impractical demands on law enforcement. The supplemental record before us highlights a matter in Union County in which the trial court, relying on the current rule and the Appellate Division's decision in this case, ordered the State to disclose video footage from 25 body-worn police cameras in connection with a detention hearing. The State may not be able to review all of those videos within days of an arrest or apply for any needed protective orders. It is also difficult to imagine how defense counsel could review, let alone use, dozens of videos in connection with a detention hearing.

Beyond that, the administration of justice calls for fair and efficient proceedings. In the case of a detention application, the focus is not on guilt, and the hearing should not turn into a mini-trial. A trial judge must instead examine two sets of questions. First, unless there is an indictment, the judge must determine probable cause -- whether an officer has a "well grounded suspicion that a crime has been" committed and that defendant committed the offense. State v. Gibson, 218 N.J. 277, 292 (2014). That, of course, calls for "less evidence than is needed to convict at trial." State v. Brown, 205 N.J. 133, 144 (2011). Second, a trial judge must assess the risk of danger, flight, and obstruction.

We note another concern as well.  Before the new law's effective date, the Attorney General developed a new document -- a "preliminary law enforcement incident report."  The PLEIR is designed to get the parties information they need about categories of evidence in a case at the very earliest stage. Prosecutors, defendants, and judges alike benefit from that approach.  It helps the parties prepare for the hearing and make a preliminary assessment of the overall case.  The current court rules call for disclosure of the PLEIR only in non-detention cases.  R. 3:4-2(c)(1)(A).  The rules should create an incentive to prepare a PLEIR in detention cases as well.

                                B.

To balance those aims, we believe that the following principles should govern the disclosure of evidence at a detention hearing:

1.  As set forth above, because the Act calls for a determination of probable cause and an assessment of the risk of danger, flight, and obstruction, which may include consideration of the nature and circumstances of the offense and the weight of the evidence, discovery should likewise be keyed to both areas. See N.J.S.A. 2A:162-18(a)(1); -19(e)(2); -20(a), (b).

2.  The complaint must be disclosed.

3.  The Public Safety Assessment must be disclosed.

29

4.  The affidavit of probable cause must be disclosed.  If a similar document with a different name is used to establish probable cause, that document should be disclosed.[1]

5.  Any available PLEIR should be disclosed.

6.  All statements and reports relating to the affidavit of probable cause should be disclosed.  In other words, if an affidavit of probable cause describes what a police officer or witness observed, an initial police report or witness statement that relates to those factual assertions must be disclosed.

7.  All statements or reports that relate to any additional evidence the State relies on to establish probable cause at the detention hearing should be disclosed.  For example, if the State, at the detention hearing, refers to a witness whose observations are not discussed in the affidavit of probable cause, all statements and reports relating to the additional witness should be disclosed.

8.  Statements and reports related to items that appear only in the PLEIR need not be disclosed.  Thus, statements related to a witness who is referred to in both the affidavit of probable cause and the PLEIR must be disclosed; but, if the

---

[1]  In a long-term investigation or some other matter in which there is an indictment at the time of the detention hearing, the indictment standing alone establishes probable cause, and no separate evaluation is required under N.J.S.A. 2A:162-19(e)(2). The indictment would trigger discovery under Rule 3:13-3(b).

30

PLEIR alone references an expert report, and the State does not otherwise rely on it at the hearing, the report need not be disclosed for the detention hearing. We ask the AOC to revise the standard form for the PLEIR to clarify that it is not incorporated into the affidavit of probable cause.

9. Statements and reports relating to the risk of flight, danger, and obstruction, N.J.S.A. 2A:162-18(a)(1), which the State advances at the hearing, should be disclosed. For example, if the defendant conveyed a threat to a witness or said he would flee if caught, and the State relied on the statements in support of detention, all statements and reports relating to those comments should be disclosed.

10. The phrase "statements and reports" refers to items that exist at the time of the hearing. The terms plainly include relevant police reports. The terms also include witness statements that are maintained only in recorded form and have not yet been reduced to writing. In those cases, a copy of the recording should be disclosed. The phrase "statements and reports," however, does not encompass video and audio files from body cameras, dash cameras, surveillance cameras, cellphones, 9-1-1 calls, or similar items, except as noted earlier in this point. We do not consider those items the functional equivalent of a statement for purposes of a discovery rule for detention hearings. To the extent an affidavit of probable cause refers

to a surveillance video or comparable item, though, an existing statement or report that summarizes the video or item must be disclosed. The video itself shall be disclosed at the time of indictment, or a pre-indictment plea offer, in accordance with Rule 3:13-3.

11. Consistent with longstanding practice, statements and reports encompass reports that are in the possession of the prosecutor, law enforcement officials, and other agents of the State. See State v. W.B., 205 N.J. 588, 608 (2011) (noting that once "a case is referred to the prosecutor following arrest by a police officer . . . , local law enforcement is part of the prosecutor's office for discovery purposes" (internal citations omitted)); State v. Murphy, 36 N.J. 172, 184 (1961) ("[A]lthough the State may, as it necessarily must, diffuse its total power among many offices and agencies, yet when the State brings its authority to bear upon one accused of crime, all of its agents must respond to satisfy the State's obligation to the accused."). A contrary approach could create an incentive to delay furnishing reports to the prosecutor.

12. All exculpatory evidence must be disclosed.

C.

With those principles in mind, and based on what we have learned from the Rule's practical application since January 1, 2017, we clarify and revise Rule 3:4-2(c) as follows:

32

(c) _Procedure in Indictable Offenses_. At the defendant's first appearance before a judge, if the defendant is charged with an indictable offense, the judge shall

    (1)   give the defendant a copy of the complaint, discovery as provided in subsections (A) and (B) below, and inform the defendant of the charge;

    (A) if the prosecutor is not seeking pretrial detention, the prosecutor shall provide the defendant with a copy of any available preliminary law enforcement incident report concerning the offense and the affidavit of probable cause;

    (B) if the prosecutor is seeking pretrial detention, the prosecutor shall provide the defendant with (i) the discovery listed in subsection (A) above, (ii) all statements or reports relating to the affidavit of probable cause, (iii) all statements or reports relating to additional evidence the State relies on to establish probable cause at the hearing, (iv) all statements or reports relating to the factors listed in N.J.S.A. 2A:162-18(a)(1) that the State advances at the hearing, and (v) all exculpatory evidence.

The revisions to subsection (A) are cosmetic; subsection (B) incorporates the principles outlined above. Both subsections are to be read in conjunction with Rule 3:13-3, which obligates the State to provide full discovery when it makes a pre-indictment plea offer or when an indictment is returned or unsealed. R. 3:13-3(a), (b)(1). When a defendant is detained, the State must obtain an indictment within 90 days

33

or qualify for an extension of time under the new speedy trial provision.  N.J.S.A. 2A:162-22(a)(1)(a), (b)(1).

In appropriate cases, the prosecutor "may apply for a protective order to redact, delay, or withhold the disclosure of materials that would expose witnesses and others to harm, hinder or jeopardize ongoing investigations or prosecutions, undermine the secrecy of informants and confidential information which the law recognizes, or compromise some other legitimate interest." State in Interest of N.H., 226 N.J. 242, 256 (2016) (citing R. 3:13-3(a)(1), (e)(1)).  The prosecutor may bring an application directly to the judge who will preside over the detention hearing.

Judges must also be mindful of practical concerns in another area.  For example, after an extensive, long-term investigation into the activities of an organized criminal group, there may be dozens of police reports at the time of arrest that arguably relate to the affidavit of probable cause. If the State seeks permission to provide more limited discovery within days of an arrest in those situations, judges may exercise their discretion and direct that a representative sample of statements and reports be disclosed before the detention hearing.

Neither the original nor the revised version of Rule 3:4-2(c) calls for disclosure of surveillance videos and similar

items.  Instead, as noted above, if the affidavit of probable cause refers to a video, the State must disclose any existing statement or report that summarizes its contents.

On that point, we do not start with a clean slate.  When we adopted the original Rule, the Court unanimously rejected the Committee's recommendation that videotapes and similar evidence be disclosed before a detention hearing.  After considering that suggestion, the full Court called for disclosure of only statements and reports.  The revised rule maintains that approach.  It is still a fair and sensible approach in light of the more limited purpose of a detention hearing:  to assess probable cause -- which judges do tens of thousands of times a year without video or audio files -- and to measure the risk of danger, flight, and obstruction.  Once again, we note that detention hearings are not full-scale trials designed to assess guilt.

We believe that the Rule, as clarified, is faithful to the statute and addresses legitimate concerns of both defendants and prosecutors.  We also believe that prosecutors will apply the Rule in good faith, in the same manner in which the Attorney General and Public Defender have proceeded throughout the ongoing criminal justice reform effort.  To the extent that a prosecutor might seek to work around the Rule by presenting a barebones affidavit of probable cause alongside a more expansive

35

PLEIR, counsel would act at his or her peril. Judges will reject affidavits that fall below the standard of probable cause. And the prosecution may not rely on information listed only in a PLEIR to advocate for detention without disclosing relevant statements or reports about that information.

Ordinarily, we would refer an opinion to an appropriate Court committee and ask it to craft a proposed rule. We have not done so here for several reasons. The matter has been fully vetted once recently, and we recognize that the Criminal Practice Committee might well divide again as to the scope of a discovery rule. We also had the benefit of hearing from key stakeholders in this appeal. The written and oral arguments of the Attorney General, Public Defender, County Prosecutors Association, and ACLU represented the highest level of professionalism and advocacy. In addition, we are aware that judges, prosecutors, and defense counsel alike need prompt guidance in this area.

We therefore adopt the rule set forth above and make it effective at once. In doing so, we rely on the Court's authority under Article VI, Section 2, Paragraph 3 of the State Constitution to make rules that govern the administration of the court system.

V.

Defendant correctly notes that the court rule must satisfy due process concerns. We find that the discovery rule -- in its original and revised form -- amply lives up to that requirement. Rule 3:4-2(c) extends far beyond what federal law requires. It also provides adequate protection under the State Constitution.

In Salerno, supra, 481 U.S. at 755, 107 S. Ct. at 2105-06, 95 L. Ed. 2d at 714, the United States Supreme Court upheld the constitutionality of the federal pretrial detention act, which New Jersey's Criminal Justice Reform Act tracks in many ways. Compare 18 U.S.C.A. §§ 3141 to 3156, with N.J.S.A. 2A:162-15 to -26. Salerno, supra, first considered and rejected a substantive due process challenge. 481 U.S. at 746-51, 107 S. Ct. at 2101-03, 95 L. Ed. 2d at 708-11. The Court explained that "whether a restriction on liberty constitutes impermissible punishment or permissible regulation" depends on "legislative intent." Id. at 747, 107 S. Ct. at 2101, 95 L. Ed. 2d at 708. The Court concluded that pretrial detention "falls on the regulatory side of the dichotomy" because it is meant to protect society, not to punish dangerous individuals, and "[t]here is no doubt that preventing danger to the community is a legitimate regulatory goal." Id. at 747, 107 S. Ct. at 2101, 95 L. Ed. 2d at 708-09.

The Court next turned to procedural due process and noted that,

> [u]nder the Bail Reform Act, the procedures by which a judicial officer evaluates the likelihood of future dangerousness are specifically designed to further the accuracy of that determination. Detainees have a right to counsel at the detention hearing. 18 U.S.C.A. § 3142(f). They may testify in their own behalf, present information by proffer or otherwise, and cross-examine witnesses who appear at the hearing. Ibid. The judicial officer charged with the responsibility of determining the appropriateness of detention is guided by statutorily enumerated factors, which include the nature and the circumstances of the charges, the weight of the evidence, the history and characteristics of the putative offender, and the danger to the community. § 3142(g). The Government must prove its case by clear and convincing evidence. § 3142(f). Finally, the judicial officer must include written findings of fact and a written statement of reasons for a decision to detain. § 3142(i). The Act's review provisions, § 3145(c), provide for immediate appellate review of the detention decision.
>
> [Id. at 751-52, 107 S. Ct. at 2104, 95 L. Ed. 2d at 711-12.]

Without any provision for discovery in the Bail Reform Act, the Court observed that those "extensive safeguards suffice to repel a facial challenge." Id. at 752, 107 S. Ct. at 2104, 95 L. Ed. at 712.

Although the State Constitution "does not enumerate the right to due process," Article 1, Paragraph 1 "protects 'values like those encompassed by the principle[] of due process.'" Doe

38

v. Poritz, 142 N.J. 1, 99 (1995) (alteration in original) (quoting Greenberg v. Kimmelman, 99 N.J. 552, 568 (1985)). To examine a procedural due process claim, courts "first assess whether a liberty or property interest has been interfered with by the State, and second, whether the procedures attendant upon that deprivation are constitutionally sufficient." Ibid. To assess the second question, we have applied the balancing test outlined in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18, 33 (1976). That standard consists of three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Ibid.

Here, there can be no dispute that pretrial detention significantly interferes with a defendant's liberty interest. But the procedures to protect that vital interest are extensive. The CJRA contains safeguards like the ones detailed in the federal act. See Salerno, supra, 481 U.S. at 751-52, 107 S. Ct. at 2104, 95 L. Ed. 2d at 711-12; supra at §§ I(A), (B). And under Rule 3:4-2(c)(1)(B), defendants whom the State seeks to

39

detain will receive not only all exculpatory evidence and a copy of the charging document, but also statements or reports that relate to (1) the affidavit of probable cause and (2) additional evidence the prosecution relies on at the detention hearing -- both to establish probable cause and to advance any relevant risk factors.

A broader discovery requirement would of course also impose a greater administrative burden on the State. In that case, particularly in light of the very tight time constraints imposed by the CJRA, the State might be forced to limit detention motions based on the resources it can devote to discovery in the days after an arrest, and not its assessment of the risk of danger, flight, or obstruction that a defendant poses. That would frustrate the purpose of the Act and upend the balance that the revised Rule attempts to strike between important interests.[2]

We conclude that the discovery protections afforded under New Jersey's Criminal Justice Reform Act satisfy the requirements of due process and pass muster under the Federal and State Constitutions.

---

[2] The analogy to N.H., supra, 226 N.J. at 245, which addresses discovery in a juvenile waiver setting, with its own distinct timeframe, is not fitting.

40

VI.

Finally, we apply Rule 3:4-2(c), as clarified, to this case. The affidavit of probable cause attached to defendant's complaint described what two eyewitnesses observed. The affidavit also noted that the witnesses identified defendant from a photo array or photo.

We agree with the trial court and Appellate Division that, under the Rule, any initial police reports about the witnesses must be disclosed. In addition, the prosecution must provide copies of statements or reports of the two eyewitnesses. When an eyewitness makes an identification, the State is required to document the process and record certain details. See State v. Henderson, 208 N.J. 208, 241, 252, 278 (2011); State v. Delgado, 188 N.J. 48, 63-64 (2006). That information should be disclosed along with copies of any photo arrays or photos used in the identification process.[3]

The prosecution need not disclose the surveillance video under the language of the Rule. We note that the PLEIR also

_____

[3] This is an exception to the Rule, which requires discovery of "statements or reports," not photos, because photos shown to a witness as part of an identification process receive special treatment under the law. See Henderson, supra, 208 N.J. at 241, 252, 278; Delgado, supra, 188 N.J. at 63-64. By ordering disclosure of the photo array and another photograph here, we do not suggest that other documents or underlying evidence referred to in an affidavit of probable cause would be subject to disclosure under Rule 3:4-2(c)(1)(B).

41

identifies certain other information, namely, ballistics evidence, a 9-1-1 call, and a consent search. Defendant did not request any statements or reports about those items. Because the State did not refer to the items in the affidavit of probable cause or its presentation at the detention hearing, any statements or reports about those items would not be subject to discovery had they been requested.

## VII.

For the reasons set forth above, we affirm and modify the judgment of the Appellate Division. We also clarify and reframe Rule 3:4-2(c). The revised Rule shall go into effect at once.


JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in CHIEF JUSTICE RABNER's opinion. JUSTICE ALBIN filed a separate opinion, dissenting in part and concurring in part, in which JUSTICE LaVECCHIA joins.

42

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

HABEEB ROBINSON,

    Defendant-Respondent,

    JUSTICE ALBIN dissenting in part and concurring in part.

    Today, the majority rewrites the discovery rule governing pretrial detention hearings. In doing so, the majority turns a blind eye to an evident flaw in the original version of Rule 3:4-2(c)(1)(B) and then engrafts a new flaw onto the redrafted Rule. The result is that the prosecutor can withhold from the defense -- and presumably the court -- relevant and critical evidence that bears on whether there is probable cause to detain a defendant.

    Under the redrafted Rule, if the prosecutor possesses a video surveillance tape that records the defendant allegedly committing a crime, the prosecutor need only turn over a written summary of what is depicted in the tape -- not a copy of the tape itself. This is true even if the State's only evidence to support probable cause is the tape. Thus, at a pretrial detention hearing, the court must rely on the written summary

1

prepared by the prosecutor, not on the actual video footage of the crime, in making the probable cause determination. In contrast, if an eyewitness statement is the basis for establishing probable cause for a crime, the prosecutor must tender the statement to the defense -- and the court. Therefore, the court receives the eyewitness statement in its original form whereas a surveillance tape is reduced to a bare written summary.

The Rule sanctifies artificial distinctions, making highly relevant evidence non-discoverable (a videotape) and second-hand evidence discoverable (written summary of tape). The redrafted Rule, moreover, gives the prosecutor a perverse incentive to place information in the Preliminary Law Enforcement Information Report (PLEIR), rather than the affidavit of probable cause, because the underlying statements and reports in the PLEIR are no longer subject to discovery.

Had the redrafted version of Rule 3:4-2(c)(1)(B) been subjected to the rulemaking process, or some abbreviated procedure that allows for public comment, perhaps we would be better informed about the implications of the new Rule. Relieving the prosecutor of legitimate discovery obligations may be expedient, but it comes at the expense of fairness. Ultimately, a just determination of whether a defendant is to be

detained pretrial should not be sacrificed for the sake of expediency.  For these reasons, I respectfully dissent.

## I.

## A.

In the case before us, the State sought the pretrial detention of defendant on a murder charge.  In support of its application for pretrial detention, the State submitted an affidavit of probable cause that referred to two eyewitness statements recounting the crime and to the witnesses' identification of defendant from a photo array.  Attached to the probable cause affidavit was the PLEIR, which also referenced a surveillance video of the crime.

Rule 3:4-2(c)(1)(B) -- now the former Rule -- provided that "if the prosecutor is seeking pretrial detention, the prosecutor shall provide the defendant with all statements or reports in its possession relating to the pretrial detention application. All exculpatory evidence must be disclosed."  Based on its interpretation of the "relating to" language in the Rule, the trial court ordered the prosecutor to disclose the two witness statements, the photo array, and the surveillance video.  The Appellate Division affirmed.  State v. Robinson, 448 N.J. Super. 501, 519-20 (App. Div. 2017).

I agree with the majority that the Rule, as written, does not require discovery of the surveillance tape.  The trial court

and Appellate Division evidently attempted -- by force of logic -- to bridge the gap in the Rule. I accept that we must enforce the Rule according to its language, but now that the Court has undertaken to amend the Rule, the majority has missed the opportunity to correct the logical flaws in the original version.

Common sense suggests that if the prosecutor is in possession of a purported eyewitness account of a crime and a videotape that actually recorded the crime, and both are "relating to pretrial detention," that both should be discoverable. The majority does not question that the eyewitness statement is discoverable. Yet, the majority will not amend the Rule to require disclosure of perhaps the best evidence -- the videotape. The prosecutor's only obligation, under the majority's reconstructed Rule, is to provide a summary of the video footage to the defense. There is no persuasive rationale for denying the defense, and the court, the opportunity to view a readily available videotape of a purported crime.

To support its position, the majority mentions one bizarre and idiosyncratic case -- without giving much detail -- where the State was ordered to disclose video footage from twenty-five body-worn cameras in connection with a detention hearing. <u>Ante</u> at ___ (slip op. at 27-28). It makes perfect sense to deny

4

discovery when disclosure is impracticable or when public safety or other legitimate concerns arise. It makes no sense to deny disclosure in garden-variety cases when a videotape is highly relevant and when disclosure is practicable.

The discordance in the majority's approach is highlighted by the fact that the redrafted Rule requires disclosure of "copies of any photo arrays or photos used in the identification process," see ante at ___ (slip op. at 40), but not the video footage of a crime from which the defense or the court could determine the validity of the identification. The photo array is no more a report or statement than video footage. The production of the video footage of a crime would be as helpful as the photo array -- if not more -- in determining probable cause.

A pretrial detention hearing is a critical stage in the criminal process. The artificial distinctions made by the majority for allowing the release of relevant witness statements and reports as well as photo arrays but not allowing the release of relevant video footage will not enhance confidence in the fairness of pretrial detention hearings.

B.

Further, the majority's amended Rule gives prosecutors a new pathway to minimize their discovery obligations at pretrial detention hearings. Under the former Rule, prosecutors were

5

required to disclose statements and reports relating to the detention hearing, such as those referenced in the affidavit of probable cause and the PLEIR. Under the majority's new Rule, the prosecutor must disclose statements and reports relating to the affidavit of probable cause, but any statements and reports contained in the PLEIR are not discoverable. Courts will make detention determinations after reviewing both the probable cause affidavit and the PLEIR. However, prosecutors now know that statements and reports referenced in the PLEIR are not subject to disclosure. The new Rule incentivizes prosecutors to put more information in the PLEIR (underlying statements and reports not discoverable) and the minimum amount of information in the affidavit of probable cause (underlying statements and reports discoverable). Prompts that allow prosecutors to circumvent the pretrial-detention discovery process will not advance the ends of justice.

Furthermore, the majority's retrenchment on the discovery rule in pretrial detention hearings is at cross-purposes with N.J.S.A. 2A:162-20(a) and (b), in which the Legislature decreed that, at such hearings, "the court may take into account information concerning . . . [t]he nature and circumstances of the offense charged [and] [t]he weight of the evidence against the eligible defendant." Clearly, in many cases, relevant video footage and statements and reports referenced in the PLEIR will

6

bear on the "nature and circumstances of the offense" and on the "weight of the evidence against" the defendant. For example, video footage may show that the defendant was not the aggressor or even the assailant in a physical altercation. Neither the defense nor the court should have to rely on the prosecutor's interpretation of the footage in a written summary. The limitations set forth in the amended discovery rule will choke off information that the court should consider in making the pretrial detention determination.

## II.

The majority's new Rule makes substantial changes to the discovery rule. This dissent shines a light on some defects in the new Rule. Had we proceeded with the rulemaking process, prosecutors, defense attorneys, judges, and academics might have alerted us to others. The rulemaking process is beneficial, even when it must proceed in an expedited and abbreviated manner. Although prosecutors and defense attorneys have widely divergent views on this subject, the voices of stakeholders and experts in the field are always enlightening. I understand that the majority believes this issue requires an accelerated response. We should proceed with caution, however, in matters that have such far-reaching consequences.

## III.

For the reasons expressed, I dissent from the majority's decision to draft a new rule that denies the defense and the court critical information bearing on the pretrial detention determination.  I concur in the judgment in this case based on the language of the then-operative Rule.