**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.  A-3745-17T6
              A-0358-18T6

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

ANTOINE MCCRAY,

      Defendant-Respondent.

_____

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

SAHAILE GABOUREL,

      Defendant-Respondent.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **March 29, 2019** |
| **APPELLATE DIVISION** |

Argued February 26, 2019 – Decided March 29, 2019

Before Judges Yannotti, Rothstadt and Gilson.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 17-11-1346 in A-3745-17.

On appeal from an interlocutory order of Superior Court of New Jersey, Law Division, Hudson County, Complaint No. W-2018-3276-0906 in A-0358-18.

Claudia Joy Demitro, Deputy Attorney General, argued the cause for appellant (Gurbir S. Grewal, Attorney General, attorney; Claudia Joy Demitro, of counsel and on the briefs).

Laura B. Lasota, Assistant Deputy Public Defender, argued the cause for respondents (Joseph E. Krakora, Public Defender, attorney; Laura B. Lasota, of counsel and on the briefs).

The opinion of the court was delivered by

YANNOTTI, P.J.A.D.

The State appeals from orders entered by the Law Division, which dismissed charges under N.J.S.A. 2C:29-9(a) that defendants purposely or knowingly disobeyed orders of pretrial release, entered by judges pursuant to the Criminal Justice Reform Act (CJRA or the Act), N.J.S.A. 2A:162-15 to -26. We address both appeals in this opinion. For the reasons that follow, we reverse.

I.

A. State v. McCray

On April 16, 2017, Antoine McCray was charged in complaint-warrant W-2017-1274-2004 with second-degree robbery, during which force was used and bodily injury inflicted, in violation of N.J.S.A. 2C:15-1(a)(1). The State

thereafter filed a motion for his pretrial detention pursuant to the CJRA. After conducting a hearing, the court denied the State's motion and entered an order dated April 27, 2017, which stated that McCray was released pretrial subject to certain non-monetary conditions. One of the conditions was that defendant "[s]hall not commit any offense during the period of release."

On August 29, 2017, McCray was charged in complaint-warrant W-2017-0904-1205 with the disorderly persons offense of theft by unlawful taking, N.J.S.A. 2C:20-3(a); fourth-degree credit card theft, N.J.S.A. 2C:21-6(c)(1); third-degree identity theft, N.J.S.A. 2C:21-17(a)(1); and fourth-degree forgery, N.J.S.A. 2C:21-1(a)(2). He also was charged in complaint-summons S-2017-1155-1205 with fourth-degree contempt of court under N.J.S.A. 2C:29-9(a), for violating the court's April 27, 2017 pretrial release order.

On November 16, 2017, a grand jury returned Indictment No. 17-11-1345, which charged McCray with conspiracy to use a credit card fraudulently, contrary to N.J.S.A. 2C:5-2(a) and N.J.S.A. 2C:21-6(h), and other offenses. The grand jury also returned Indictment No. 17-11-1346, charging McCray with contempt of court under N.J.S.A. 2C:29-9(a) for violating the pretrial release order. The indictments alleged that he committed the offenses on or about August 29, 2017.

A-3745-17T6

On December 7, 2017, a grand jury returned Indictment No. 17-12-1391, which charged McCray and others with third-degree conspiracy to use a credit card fraudulently, on or about August 2, 2017. In addition, on December 13, 2017, a grand jury returned Indictment No. 17-12-1418, which charged McCray and another person with several counts of third-degree conspiracy to use a credit card fraudulently, on or about August 4, 2017.

On February 5, 2018, McCray pled guilty to four counts of third-degree conspiracy to use a credit card fraudulently, specifically count four of Indictment No. 17-11-1345, count three of Indictment No. 17-12-1391, and counts one and three of Indictment No. 17-12-1418. He also pled guilty to fourth-degree contempt of court as charged in Indictment No. 17-11-1346.

At the plea hearing, McCray provided a factual basis for the pleas. Regarding the contempt charge, he admitted that the court previously had entered an order permitting his pretrial release, and as a condition of his release, he was "supposed to remain offense free." He also admitted that he committed the offenses for which he was pleading guilty while he was on pretrial release.

The judge who accepted the plea advised counsel that he had concerns about the validity of the contempt charge. The judge stated that on the sentencing date, he would determine whether to reject the plea to that offense

A-3745-17T6

and dismiss the indictment on the ground that it was "defective as a matter of law." The judge questioned whether the State could charge a defendant with contempt under N.J.S.A. 2C:29-9(a) based on a violation of the terms of a pretrial release order. The judge directed the parties to file briefs addressing the issue.

The judge heard oral argument on April 13, 2018, and filed a written opinion that day, in which the judge ruled that the contempt charge must be dismissed. In his opinion, the judge stated that neither the CJRA nor the court rules implementing the Act authorize a charge of contempt under N.J.S.A. 2C:29-9(a) as a sanction for violating conditions in a pretrial release order. The judge also reasoned that the constitutional protections against double jeopardy preclude the State from punishing a defendant for violating a provision in a pretrial release order, based on the commission of a new offense, and also punishing defendant for committing that offense.

The judge entered an order dated April 13, 2018, dismissing the indictment with prejudice. The judge denied the State's motion for a stay of the order pending appeal, and later sentenced defendant on the other charges to which he pled guilty. The judge imposed concurrent terms of four years of incarceration, each without a period of parole ineligibility. The State's appeal followed.

B. State v. Gabourel

Defendant Sahaile Gabourel was charged under complaint-warrant W-2018-2988-0906 with seven charges related to the possession and distribution of a controlled dangerous substance (CDS), including second-degree possession of a CDS with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-7.1(a); and third-degree possession of a CDS with intent to distribute within a school zone, N.J.S.A. 2C:35-7(a).

In an affidavit of probable cause, an officer of the Jersey City Police Department (JCPD) stated that on July 10, 2018, he observed Gabourel distribute heroin to another individual, in exchange for currency. The officer arrested Gabourel and found that he was in possession of twenty-nine glassine bags of heroin.

On July 11, 2018, the State filed a motion under the CJRA for Gabourel's pretrial detention. The judge conducted a hearing on July 16, 2018, and denied the State's motion. The judge stated that he was "going to put a curfew in place" and instructed Gabourel on this condition. The judge told Gabourel he had to remain in his residence from 6:00 p.m. to 6:00 a.m. The judge stated, "If you go out you're violating the terms of your release." The judge asked Gabourel if he understood those terms, and he replied, "Yes."

The judge entered an order dated July 16, 2018, ordering Gabourel's release on his own recognizance, subject to certain conditions. Among other conditions, the order stated that he must report to Pretrial Services telephonically and in person once every other week, and that Gabourel "[s]hall comply with the following curfew: 6pm-6am."

On July 23, 2018, at 8:09 p.m., two officers of the JCPD observed Gabourel standing on a street corner in Jersey City, in violation of the curfew. The officers apparently were aware of the curfew requirements of the pretrial release order, and determined that Gabourel was violating the order. The officers stopped and arrested him. He had three Percocet pills in his possession.

Gabourel was charged in complaint-warrant W-2018-3276-0906 with fourth-degree contempt of court, N.J.S.A. 2C:29-9(a); and possession of a prescription legend drug, N.J.S.A. 2C:35-10.5(a)(1), a disorderly persons offense. The State then filed a motion pursuant to N.J.S.A. 2A:162-24 for revocation of Gabourel's pretrial release.

The judge thereafter conducted a hearing on the State's motion. The judge found that Gabourel had disobeyed the pretrial release order by violating the curfew. The judge also found that the State met its burden for revocation of defendant's pretrial release. The judge found, however, that the CJRA did

7

not permit a contempt charge for violating the pretrial release order. The judge entered an order dated August 9, 2018, dismissing the charge. We thereafter granted the State's motion for leave to appeal.

## II.

On appeal, the State argues that the trial court judges erred by dismissing the contempt charges against defendants. The State contends the judges erred by finding that the CJRA and the court rules implementing the Act do not permit the State to charge a defendant with contempt under N.J.S.A. 2C:29-9(a) if the defendant violates a pretrial release order.

"[I]ndictments are presumed valid and should be dismissed only upon the clearest and plainest ground and only if palpably defective." State v. Schenkolewski, 301 N.J. Super. 115, 137 (App. Div. 1997) (citing State v. N.J. Trade Waste Ass'n, 96 N.J. 8, 8-19 (1984); State v. Weleck, 10 N.J. 355, 364 (1952); State v. Engel, 249 N.J. Super. 336, 359-60 (App. Div. 1991)). "A trial court . . . should not disturb an indictment if there is some evidence establishing each element of the crime to make out a prima facie case." State v. Morrison, 188 N.J. 2, 12-13 (2006) (citing State v. Hogan, 144 N.J. 216, 236 (1996); State v. Vasky, 218 N.J. Super. 487, 491 (App. Div. 1987)).

We will not reverse an order dismissing an indictment unless shown to be a mistaken exercise of discretion. State v. Warmbrun, 277 N.J. Super. 51,

59-60 (App. Div. 1994) (quoting N.J. Trade Waste Ass'n, 96 N.J. at 18-19). "However, if a trial court's . . . decision is based upon a misconception of the law," we owe that "decision no particular deference." State v. Lyons, 417 N.J. Super. 251, 258 (App. Div. 2010) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Here, it is undisputed that judges had entered orders pursuant to the CJRA releasing defendants pretrial on conditions. Among other conditions, McCray was ordered not to commit a new offense while on release, and Gabourel was ordered to comply with a curfew. Thereafter, McCray committed new offenses and Gabourel violated the curfew. Thus, the State had prima facie evidence that defendants purposely or knowingly disobeyed judicial orders. See N.J.S.A. 2C:29-9(a).

The State contends that the trial judges erred by finding that the CJRA does not permit the State to charge defendants with contempt under N.J.S.A. 2C:29-9(a) for violating a condition of pretrial release. In response, defendants argue that the plain language of the CJRA and its legislative history show that the Legislature rejected contempt as a remedy for violating a condition of release.

"The overriding goal of all statutory interpretation 'is to determine as best we can the intent of the Legislature, and to give effect to that intent.'"

State v. S.B., 230 N.J. 62, 67 (2017) (quoting State v. Robinson, 217 N.J. 594, 604 (2014)). We first consider the language of the statute because the statutory language is "the best indicator" of legislative intent. State v. Gandhi, 201 N.J. 161, 176 (2010) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

We must interpret the words of a statute in accordance with "their ordinary meaning and significance." DiProspero, 183 N.J. at 492 (citing Lane v. Holderman, 23 N.J. 304, 313 (1957)). We also must consider the relevant provisions of the statute "in context with related provisions so as to give sense to the legislation as a whole." Ibid. (citing Chasin v. Montclair State Univ., 159 N.J. 418, 426-27 (1999)).

"If the plain language chosen by the Legislature 'leads to a clearly understood result' that is consistent with the legislative objectives of the statute and its context with related provisions, we apply the law as written." Robinson, 217 N.J. at 604 (first quoting State v. Hudson, 209 N.J. 513, 529 (2012); and then citing State v. Rangel, 213 N.J. 500, 509 (2013)). We may not "rewrite a plainly written" statute "or presume that the Legislature intended something other than that expressed by way of the plain language." DiProspero, 183 N.J. at 492 (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).

A-3745-17T6

The CJRA states that "[a] prosecutor may file a motion . . . at any time" for the pretrial detention of an eligible defendant who is charged with any of the crimes or offenses enumerated in N.J.S.A. 2A:162-19(a). N.J.S.A. 2A:162-19(a). An "eligible defendant" is defined in the Act as "a person for whom a complaint-warrant is issued for an initial charge involving an indictable offense or a disorderly persons offense unless otherwise provided in" the Act. N.J.S.A. 2A:162-15. The CJRA states that a court may order an eligible defendant's pretrial detention if it finds by

> clear and convincing evidence that no amount of monetary bail, non-monetary conditions of pretrial release or combination of monetary bail and conditions would reasonably assure the eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, and that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process.
>
> [N.J.S.A. 2A:162-18(a)(1).]

If the court determines that the defendant should not be detained pretrial, it shall order the defendant's release on his or her personal recognizance if it "finds that the release would reasonably assure the eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, and that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process." N.J.S.A. 2A:162-17(a). If

the court does not make that finding, the court may order the eligible defendant's release subject to the following conditions:

> (a) the eligible defendant shall not commit any offense during the period of release;
>
> (b) the eligible defendant shall avoid all contact with an alleged victim of the crime;
>
> (c) the eligible defendant shall avoid all contact with all witnesses who may testify concerning the offense that are named in the document authorizing the eligible defendant's release or in a subsequent court order; and
>
> (d) any one or more non-monetary conditions as set forth in [N.J.S.A. 2A:162-17(b)(2)].
>
> [N.J.S.A. 2A:162-17(b)(1).]

The non-monetary conditions in N.J.S.A. 2A:162-17(b)(2) include requiring the eligible defendant to: "remain in the custody of a designated person . . . ;" maintain or seek employment; "maintain or commence an educational program;" "abide by specified restrictions on personal associations, place of abode, or travel;" "comply with a specified curfew;" and "refrain from possessing a firearm, destructive device, or other dangerous weapon[.]" N.J.S.A. 2A:162-17(b)(2)(a), (b), (c), (d), (f), and (g).

The CJRA also states that if the court releases an eligible defendant pretrial, it must inform the defendant of:

(a)   all the conditions, if any, to which the release is subject, in a manner sufficiently clear and specific to serve as a guide for the eligible defendant's conduct; and

(b) the penalties for and other consequences of violating a condition of release, which may include the immediate issuance of a warrant for the eligible defendant's arrest.

The failure of the court to notify the eligible defendant of any penalty or consequence for violating a condition of release as required by this subparagraph shall not preclude any remedy authorized under the law for any violation committed by the eligible defendant.

[N.J.S.A. 2A:162-23(a)(1).]

In addition, the CJRA sets forth the grounds upon which a court may revoke an eligible defendant's pretrial release and order detention. N.J.S.A. 2A:162-24 states:

Upon motion of a prosecutor, when an eligible defendant is released from custody before trial pursuant to [N.J.S.A. 2A:162-17 or N.J.S.A. 2A:162-22], the court, upon a finding that the eligible defendant while on release has violated a restraining order or condition of release, or upon a finding of probable cause to believe that the eligible defendant has committed a new crime while on release, may not revoke the eligible defendant's release and order that the eligible defendant be detained pending trial unless the court, after considering all relevant circumstances including but not limited to the nature and seriousness of the violation or criminal act committed, finds clear and convincing evidence that no monetary bail, non-monetary conditions of release or combination of

monetary bail and conditions would reasonably assure the eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, or that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process.

The rules adopted by the Supreme Court to implement the CJRA also discuss the trial court's authority to address violations of the conditions of release. Rule 3:26-2(d)(1) states that on a motion by the prosecutor

the court, upon a finding, by a preponderance of the evidence, that the defendant while on release violated a restraining order or condition of release, or upon a finding of probable cause to believe that the defendant has committed a new crime while on release, may revoke the defendant's release and order that the defendant be detained pending trial where the court, after considering all relevant circumstances including but not limited to the nature and seriousness of the violation or criminal act committed, finds clear and convincing evidence that no monetary bail, non-monetary conditions of release or combination of monetary bail and conditions would reasonably assure the defendant's appearance in court when required, the protection of the safety of any other person or the community, or that the defendant will not obstruct or attempt to obstruct the criminal justice process.

Although N.J.S.A. 2A:162-24 and Rule 3:26-2(d)(1) do not state that criminal prosecution for contempt is one of the potential sanctions for a defendant's failure to comply with a pretrial release order, the CJRA and the court rule do not preclude the State from charging a defendant with contempt under N.J.S.A. 2C:29-9(a) in these circumstances. The statute and the rule set

14

forth the actions a court may take if a released defendant violates a condition of release. The statute and the rule do not address the State's authority to charge a defendant with criminal contempt based on a violation of a pretrial release order because the statute and the rule deal with the court's authority.

Indeed, the court does not have authority to charge a defendant with a criminal offense. The prosecutor has the discretion to prosecute those whom the prosecutor believes has violated the law. See State v. Hermann, 80 N.J. 122, 127 (1979) (citations omitted). Furthermore, our "State Constitution guarantees the grand jury a central role in the enforcement of the criminal law of this State." Hogan, 144 N.J. at 227 (citing N.J. Const. art. 1, ¶ 8). "Specifically, the grand jury must determine whether the State has established a prima facie case that a crime has been committed and that the accused has committed it." Ibid. (citations omitted).

Moreover, as stated previously, N.J.S.A. 2A:162-23 requires a court to inform an eligible defendant of all conditions of release. This section of the Act provides, however, that a court's failure to do so does "not preclude any remedy authorized under the law for any violation committed by the eligible defendant." Ibid.

On appeal, the State argues that the term "remedy" in N.J.S.A. 2A:162-23 includes a criminal contempt charge. The more plausible interpretation,

however, is that the term "remedy" includes the actions a court may take to address a defendant's failure to comply with the conditions of release. Because the court does not have the authority to charge a defendant with a criminal offense, it is not one of the remedies referred to in N.J.S.A. 2A:162-23. Nevertheless, the statute does not preclude the State from charging a defendant with contempt under N.J.S.A. 2C:29-9(a) for violating a pretrial release order.

Defendants argue, however, that because there is no provision in the CJRA that specifically authorizes a criminal contempt charge, the Legislature intended that the remedies in N.J.S.A. 2A:162-23, including revocation of release, are the only sanctions that may be imposed for a violation of a condition of pretrial release. In support of this argument, defendants rely upon the legislative history of the CJRA. A court may consider such evidence when endeavoring to discern the Legislature's intent. DiProspero, 183 N.J. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).

Our Supreme Court has noted that "[i]n many respects, the text of the [CJRA] follows the federal Bail Reform Act of 1984 [(BRA)], 18 U.S.C.A. §§ 3141 to 3156, and the District of Columbia's statutory scheme for pretrial detention, D.C. Code. §§ 23-1321 to -1333." State v. Robinson, 229 N.J. 44, 56 (2017). The Court pointed out that one of the sponsors of the legislation stated in a public hearing that "the Legislature looked to both laws among

others when it framed New Jersey's reform measure." Ibid. (citing Publ. Hearing Before S. Law & Pub. Safety Comm., S. Con. Res. 128 2 (2014)).

The federal BRA and the D.C. Code authorize the filing of criminal contempt charges for certain violations of conditions of pretrial release. See 18 U.S.C. § 3148(a) and (c) (stating that a defendant who has violated a condition of pretrial release "is subject to a revocation of release, an order of detention, and a prosecution for contempt of court"); D.C. Code § 23-1329(a) (providing that a defendant "who has violated a condition of release shall be subject to revocation of release, an order of detention, . . . and prosecution for contempt of court").

Defendants argue that in passing the CJRA, the Legislature intentionally omitted a similar provision authorizing prosecution for contempt of court for a violation of a condition of pretrial release. In this regard, we note that when the legislation was first introduced, N.J.S.A. 2A:162-24 stated that:

> In addition to revocation of release as authorized by this section, a violation of a condition of pretrial release imposed pursuant to [the CJRA] or any other law, may subject the defendant to civil contempt, criminal contempt, forfeiture of bail, or any combination of these sanctions and any other sanctions authorized by law.
>
> [S. 946/A. 1910 (2014).]

17

In addition, when the legislation was first introduced, N.J.S.A. 2A:162-15 stated that the Act:

> shall be liberally construed to effectuate the purpose of relying upon contempt of court proceedings or criminal sanctions instead of financial loss to ensure the appearance of the defendant, that the defendant will not pose a danger to any person or the community, and that the defendant will comply with all conditions of bail.
>
> [S. 946/A. 1910 (2014).]

These provisions were deleted from the versions of N.J.S.A. 2A:162-15 and N.J.S.A. 2A:162-24 passed and enacted into law. There is, however, no statement by a sponsor of the legislation or any legislative committee that explains why the references to criminal contempt initially proposed for inclusion in N.J.S.A. 2A:162-15 and N.J.S.A. 2A:162-24 were deleted.

In the absence of such a statement or some other evidence of legislative intent, it is reasonable to conclude that the members of the Legislature believed there was no need to include a provision in the CJRA similar to the provisions in the federal BRA and D.C. Code authorizing a criminal contempt prosecution for a violation of a pretrial release order. It is also reasonable to infer that the members of the Legislature believed a pretrial release order was a judicial order under N.J.S.A. 2C:29-9(a) and that statute sufficiently addressed the potential criminal consequences of a violation of a pretrial release order.

# III.

The State further argues that New Jersey's case law confirms its ability to charge a defendant with contempt under N.J.S.A. 2C:29-9(a) if the defendant purposely or knowingly violates a condition in a pretrial release order. In support of that argument, the State relies upon Gandhi, 201 N.J. 161.

In Gandhi, the defendant became obsessed with a woman who rebuffed his desire for a romantic and sexual relationship. Gandhi, 201 N.J. at 171. The woman filed a complaint against the defendant charging harassment, but later withdrew the complaint. Ibid. The trial court nevertheless "issued an oral restraining order" directing the defendant not to have any contact with the woman. Ibid.

The defendant violated the order and he was charged with stalking under N.J.S.A. 2C:12-10(c). Id. at 172-73. The trial court set bail and included a no-contact directive in the bail order. Id. at 173. Later, after the defendant violated that order, the court increased the amount of bail and expanded the scope of the no-contact directive. Ibid. Thereafter, the defendant continued to violate the court's orders. Ibid.

The State filed additional charges against the defendant, and the charges included numerous counts of contempt of court under N.J.S.A. 2C:29-9(a), based on the defendant's violations of the no-contact requirements of the

court's orders. Id. at 173-74. The defendant was tried and convicted of third-degree stalking and contempt of court. Id. at 174.

On appeal, the defendant argued that the no-contact orders and the bail orders with no-contact provisions, were an insufficient factual basis for finding that he engaged in stalking in violation of a court order, which elevated the stalking charge from a fourth-degree to a third-degree offense. Id. at 188. The Supreme Court rejected that argument, noting that "[w]e insist on compliance with judicial orders to promote order and respect for the judicial process." Id. at 190.

The Court added that, "The no-contact orders in [the] defendant's bail orders did not lose their character as judicial no-contact orders merely because bail consequences could attach for their violation. As judicial no-contact orders, [the] defendant was obligated to strictly comply with them." Ibid. The Court also stated that the defendant's violation of the bail orders "provid[ed] the bases for the numerous contempt charges filed against him." Id. at 191.

The Court's reasoning in Gandhi applies here. Conditions set forth in a pretrial release order "d[o] not lose their character" as a judicial order merely because other consequences, such as revocation of release, could attach for their violation. See id. at 190. We expect defendants to strictly comply with the court's pretrial release orders. We therefore conclude that a pretrial release

20                                                                          A-3745-17T6

order is a "judicial order" under N.J.S.A. 2C:29-9(a), and a defendant who purposely or knowingly violates the conditions in the order may be charged with contempt under N.J.S.A. 2C:29-9(a).

Defendants argue, however, that case law addressing violations of court orders in other contexts shows that the Legislature did not intend that a defendant who violates conditions in a pretrial release order would be subject to prosecution for criminal contempt. Defendants cite State v. Williams, 234 N.J. Super. 84 (App. Div. 1989), in support of this argument.

In Williams, after the defendant was convicted of certain offenses, the trial court sentenced him to three years of probation and time served, but ordered that the defendant shall have no contact with his ex-wife and certain other individuals. Id. at 86. The defendant violated the no-contact condition and he was charged with three counts of contempt of court under N.J.S.A. 2C:29-9(a), as well as certain other offenses. Id. at 87.

We held that a violation of a condition of probation may not be charged as criminal contempt. Id. at 93. We observed that the probation statute allows the court to place "statutory conditions" in the order placing a defendant on probation, and the consequence of a violation is specified in N.J.S.A. 2C:45-3(a)(4). Id. at 90. "We . . . dr[e]w a distinction between an order direct[ing]

. . . a defendant . . . to do or refrain from doing a particular act[,]" which could be the basis of a contempt of court charge, "and a conditional order which either states the ramifications of its violation or has such consequences established by law." Id. at 91.

We also stated that "[c]ontempt of court should not be superimposed as an additional remedy in a probation violation setting if the act that occasions the violation is not otherwise criminal." Ibid. We concluded "that when the Legislature expressly stated in N.J.S.A. 2C:45-3(a)(4) that the sanction for a violation of probation (other than for the inherent criminality of the act) would be a revocation of probation, it intended that a defendant would [not] be subject to a new indictment for contempt in addition to the punishment for the original offense." Id. at 93.

We are convinced that defendants' reliance upon Williams is misplaced. In Williams, the court held that a violation of probation could not be the basis of a criminal contempt charge because in the probation statute the Legislature had prescribed the sanctions the court may impose for violations, which may include "forfeiture of [the defendant's] conditional exemption from punishment for the original crime" rather than additional punishment for the probation violation. Id. at 92 (quoting Williams v. State, 528 A.2d 507, 508 (Md. 1987)).

This reasoning does not apply to violations of a pretrial release order because the CJRA is not a substantive criminal enactment, and pretrial detention under the Act is not punishment. See United States v. Salerno, 481 U.S. 739, 746-48 (1987) (holding that federal BRA is a regulatory measure that does not provide for punishment). In N.J.S.A. 2A:162-24, the Legislature has prescribed the sanctions the court may apply to address a violation of a condition of release, but these sanctions do not include punishment.

In further support of their argument, defendants rely upon State ex. rel. S.S., 367 N.J. Super. 400 (App. Div. 2004), aff'd, 183 N.J. 20 (2005). In that case, a juvenile was adjudicated delinquent for contempt after she violated the court's order, which required that she obey the rules of her home and school. Id. at 403-04. We reversed the adjudication of contempt. Id. at 416.

We noted that while N.J.S.A. 2C:29-9(a) appeared to apply literally to the juvenile's conduct, applying the statute to the violation of the order to obey the rules of home and school would not be consistent with "the overriding goal of the juvenile justice system[, which] is rehabilitation, not punishment." Id. at 406-07 (citations omitted). We held that while we understood "that the court must have some means of enforcing orders involving juveniles who repeatedly run away from home or are chronically truant[,]" a charge under

N.J.S.A. 2C:29-9 "is not the appropriate or intended means of enforcement." Id. at 413.

The Supreme Court affirmed our judgment, substantially for the reasons stated in our opinion. S.S., 183 N.J. at 21-22. The Court concluded that in view of the legislative goals of the criminal contempt statute and the State's juvenile justice system, the trial court should not have subjected the juvenile to an adjudication of delinquency based on the conduct at issue. Ibid. (quoting S.S., 367 N.J. Super. at 413).

Defendants' reliance upon the decisions in S.S. is misplaced. Those decisions are based on an assessment of the Legislature's purposes of the criminal contempt statute and the statutes governing the juvenile justice system. The reasoning does not apply to violations of pretrial release orders.

The goal of the criminal contempt statute is to promote compliance with judicial orders by punishing those who purposely or knowingly fail to comply with those orders. See N.J.S.A. 2C:29-9(a). The purpose of the CJRA, as stated in N.J.S.A. 2A:162-15, is to rely primarily

> upon pretrial release by non-monetary means to reasonably assure an eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process, and that the eligible defendant will comply with all conditions of release, while authorizing the court, upon motion of a

24

> prosecutor, to order pretrial detention of the eligible defendant when it finds clear and convincing evidence that no condition or combination of conditions can reasonably assure the effectuation of these goals.

Permitting the State to charge an eligible defendant with criminal contempt under N.J.S.A. 2C:29-9(a) based on a violation of a pretrial release order furthers the goals of the criminal contempt statute and the CJRA. A criminal contempt charge would provide the State with an additional means to address a violation of a condition in the pretrial release order. It would also deter defendants from violating conditions of release, thereby avoiding the potential revocation of release and detention pretrial.

IV.

On appeal, defendants argue that the trial courts did not err by ordering the dismissal of the criminal contempt charges because they were not properly notified that they could be charged with contempt if they violated a condition of pretrial release. We disagree.

"No one shall be punished for a crime unless both that crime and its punishment are clearly set forth in positive law." In re DeMarco, 83 N.J. 25, 36 (1980). "The question ultimately is one of fairness . . . [and t]he test is whether the statute gives a person of ordinary intelligence fair notice that his conduct is forbidden and punishable by certain penalties." Id. at 37.

We are convinced that N.J.S.A. 2C:29-9(a) provides sufficient notice that a person who purposely or knowingly violates a judicial order may be found guilty of a crime of the fourth degree and punished accordingly. The statute provided defendants with "fair notice that [their] conduct [was] forbidden and punishable by certain penalties." See DeMarco, 83 N.J. at 37.

In support of their argument, defendants rely upon State v. D.G.M., 439 N.J. Super. 630 (App. Div. 2015). In that case, a complainant obtained a final restraining order (FRO) against the defendant pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35, which "'prohibited' [the] defendant 'from having any (oral, written, personal, electronic or other) form of contact or communication with'" the complainant. Id. at 633.

Thereafter, the defendant and the complainant attended their child's soccer game. Id. at 634. The defendant sat near the complainant and recorded the game and the complainant on his cell phone. Ibid. The State charged the defendant with criminal contempt under N.J.S.A. 2C:29-9(b), and he was found guilty. Ibid. On appeal, we held that the defendant had engaged in a form of "communication" with the complainant. Id. at 640. We decided, however, that defendant's conviction for contempt could not stand because he could not have known his specific conduct violated the FRO and could result in a criminal prosecution. Id. at 642.

D.G.M. does not support defendants' arguments. Here, McCray's pretrial release order states that he "[s]hall not commit any offense" while released. In addition, Gabourel's pretrial release order states that he "[s]hall comply with" the curfew from 6:00 p.m. to 6:00 a.m. Therefore, the pretrial release orders provided defendants with notice of the conditions imposed, and the statute provided defendants with adequate notice they could be charged with criminal contempt if they purposely or knowingly violated the orders.

V.

McCray argues that even if this court finds the CJRA permits the State to charge criminal contempt based on a violation of a pretrial release order, the trial court's order dismissing his charge should be affirmed. McCray contends that the trial court correctly found that the double jeopardy protections of the United States and New Jersey Constitutions preclude the State from prosecuting him for contempt, based on a violation of the condition that he commit no new offenses while on pretrial release, and also prosecuting him for committing those new offenses. We disagree.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Our State Constitution provides that: "No person shall, after acquittal, be tried for the

27                                                                    A-3745-17T6

same offense." N.J. Const. art. 1, ¶ 11. Our Supreme Court "has consistently interpreted the State Constitution's double-jeopardy protection as coextensive with the guarantee of the federal Constitution." State v. Miles, 229 N.J. 83, 92 (2017) (citing State v. Schubert, 212 N.J. 295, 304 (2012); State v. Dively, 92 N.J. 573, 578 (1983); State v. Barnes, 84 N.J. 362, 370 (1980)).

The Double Jeopardy Clause protects persons "against (1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.'" Ibid. (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). To determine whether a second prosecution is for the "same offense," we apply the "same-elements tests" first announced in Blockburger v. United States, 284 U.S. 299, 304 (1932). Miles, 229 N.J. at 96. Therefore, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied . . . is whether each provision requires proof of a fact which the other does not." Id. at 93 (quoting Blockburger, 284 U.S. at 304).

In Miles, the defendant sold marijuana to an undercover police officer on the streets of Camden. Id. at 86-87. The defendant was charged with possession of marijuana with intent to distribute and possession of a CDS with intent to distribute in a school zone. Id. at 87. The defendant was separately charged in municipal court with the disorderly persons offense of possession

28

of marijuana. Ibid. The municipal charge was later amended to loitering to possess marijuana. Ibid. The defendant pled guilty to the loitering charge, and thereafter moved to dismiss the school zone offense on double jeopardy grounds. Id. at 88.

In Miles, the Supreme Court held that going forward it would apply the "same-elements" test under Blockburger, rather than the "same-evidence" test in Illinois v. Vitale, 447 U.S. 410, 421 (1980), in which the Supreme Court of the United States found "that a second prosecution could be barred if it relied on the same evidence used to prove the earlier charge." Miles, 229 N.J. at 93.

Our Supreme Court held that loitering to possess marijuana and possession of CDS with intent to distribute in a school zone were not the "same offense" for double jeopardy purposes. Id. at 99-100. The Court pointed out that the school zone offense required proof of two elements that were not required for the loitering offense. Id. at 100.

The Court held, however, that under the "same-evidence" test, the successive prosecution for the school zone offense was barred because it was based on the same evidence that supported the plea and conviction on the loitering charge. Ibid. The Court stated that the "same-evidence" test applied because that test was in effect when the defendant committed the offenses. Id. at 99. The Court determined that the "same-elements" standard would be

applied to offenses committed after the date of the opinion, which was May 16, 2017. Id. at 83, 99.

The "same-elements" test applies here because McCray allegedly committed the offenses after Miles was decided. Applying that test, we conclude that double jeopardy principles do not preclude McCray's prosecution for violation of the condition in the court's pretrial release order, based on his commission of new offenses, and prosecution of him for those substantive offenses.

As we stated previously, McCray pled guilty to four counts of conspiracy to engage in the fraudulent use of credit cards in violation of N.J.S.A. 2C:5-2(a) and N.J.S.A. 2C:21-6(h). That offense does not require proof that McCray "purposely or knowingly" disobeyed a judicial order, which is required by N.J.S.A. 2C:29-9(a). This is so even where, as in this case, McCray was charged with violating the order by committing the credit-card offenses while on pretrial release. Therefore, conspiracy to use a credit card fraudulently and violation of a judicial order are not the "same offense" for double jeopardy purposes.

In its opinion in the McCray case, the trial court cited United States v. Dixon, 509 U.S. 688, 691 (1993), in which the Court considered whether the Double Jeopardy Clause precluded the subsequent prosecution of two

30

defendants who had previously been "tried for criminal contempt of court for violating court orders that prohibited them from engaging in conduct that was later the subject of criminal prosecution."  In <u>Dixon</u>, the Court addressed cases involving two defendants, Dixon and Foster.  <u>Id.</u> at 691-92.

Dixon had been arrested for murder and released pursuant to the D.C. pretrial detention statute with a "no-new offense" condition.  <u>Id.</u> at 691 (citing D.C. Code § 23-1329(a)).  Thereafter, Dixon was arrested and charged with the commission of certain drug offenses.  <u>Ibid.</u>  A court later found Dixon guilty of criminal contempt and sentenced him to 180 days in jail.  <u>Id.</u> at 692.  Dixon thereafter filed a motion to dismiss the indictment charging him with the drug offenses, arguing that the second prosecution on the drug charges violated the Double Jeopardy Clause.  <u>Ibid.</u>

In Foster's case, the court had issued a civil protection order, which "required that he not 'molest, assault, or in any manner threaten or physically abuse'" his estranged wife.  <u>Ibid.</u>  Foster's estranged wife filed motions alleging that he violated the order by threatening and assaulting her.  <u>Ibid.</u>  A court found Foster guilty of four counts of criminal contempt as well as the assaults, but found him not guilty of the other charges.  <u>Id.</u> at 693.  The Government thereafter charged "Foster with simple assault[;] . . . threatening to injure another[;] . . . and assault with intent to kill[.]"  <u>Ibid.</u>  Foster moved to

31

dismiss the indictment, and argued that the second prosecution violated the Double Jeopardy Clause. Ibid.

Justice Scalia, joined by Justice Kennedy, concluded that the Double Jeopardy Clause barred Dixon's second prosecution on the drug charges, and also barred Foster's second prosecution for simple assault. Id. at 697-702 (plurality). Justice Scalia stated, however, that the other crimes for which Foster was prosecuted were not barred because they were not specifically addressed in the order of protection and those charges "passed" the Blockburger test. Id. at 700-02. Justice Scalia found that Dixon's prosecution on the drug charge "did not include any element not contained" in the contempt offense, and Foster's indictment for assault was "based on the same event" that formed the basis for his prior contempt conviction. Id. at 700.

Justice White, joined by Justice Stevens, concluded that the Double Jeopardy Clause barred the successive prosecutions of Dixon and Foster on all of the substantive offenses. Id. at 720-41 (White, J., concurring in part, dissenting in part). Justice Souter also agreed that the successive prosecutions of all counts was barred. Id. at 743-63 (Souter, J., concurring in part, dissenting in part).

Chief Justice Rehnquist, joined by Justices O'Connor and Thomas, concluded that the Double Jeopardy Clause did not preclude the government

32

from prosecuting Dixon and Foster on any of the substantive offenses.  Id. at 714 (Rehnquist, C.J., concurring in part, dissenting in part).  The Chief Justice disagreed with Justice Scalia's application of the Blockburger test.  Ibid.

The Chief Justice stated the prosecutions were not barred because a defendant convicted of the substantive offenses "has not necessarily satisfied any statutory element of contempt."  Id. at 718-19.  The Chief Justice emphasized that Blockburger requires a court to "focus[] on the statutory elements of the offenses charged, not on the facts that must be proved under the particular indictment at issue[.]"  Id. at 716-17.

Justice Blackmun agreed that the Double Jeopardy Clause did not bar the government from prosecuting Dixon and Foster on all charges.  Id. at 741-43 (Blackmun, J., concurring in part, dissenting in part).  Justice Blackmun noted that: "The purpose of contempt is not to punish an offense against the community at large but rather to punish the specific offense of disobeying a court order."  Id. at 742.

We note that after Dixon, many states have disagreed on the manner in which the Blockburger test should be applied when deciding whether criminal contempt based on a commission of a new offense and the related substantive crimes are the same offense for double jeopardy purposes.  Some states have followed Justice Scalia's approach.  See, e.g., State v. Johnson, 676 So. 2d 408,

33

410-11 (Fla. 1996); Commonwealth v. Yerby, 679 A.2d 217, 219-221 (Pa. 1996). Other states have followed Chief Justice Rehnquist's approach. See, e.g., State v. Bernacki, 52 A.3d 605, 613 (Conn. 2012); People v. Wood, 698 N.Y.S.2d 122, 126-27 (App. Div. 1999), aff'd, 742 N.E.2d 114 (N.Y. 2000).

In Miles, our Supreme Court did not address the merits of either approach. Rather, the Court applied the "same-elements" test under Blockburger, and compared the elements of the offenses at issue to determine if they were the same. See Miles, 229 N.J. at 93, 96.

Applying the analysis required by Miles, we conclude that the Double Jeopardy Clause does not bar McCray's prosecution for criminal contempt, based on the commission of new offenses, and the new offenses. The elements of criminal contempt and the new offenses are not the same offense for double jeopardy purposes. Thus, the Double Jeopardy Clause does not preclude the State from charging McCray with contempt under N.J.S.A. 2C:29-9(a) and the related offenses.

We therefore conclude that in the CJRA, the Legislature did not preclude the State from charging a defendant with contempt under N.J.S.A. 2C:29-9(a) for violating a condition in the court's pretrial release order. A pretrial release order is a judicial order for purposes of N.J.S.A. 2C:29-9(a), and an eligible defendant may be charged under that statute if he or she purposely or

A-3745-17T6

knowingly violates the order. Furthermore, defendants were clearly informed of the conditions in the pretrial release order, and defendants had adequate notice they could be charged with criminal contempt if they violated the order. In addition, double jeopardy principles do not bar the State from prosecuting McCray for criminal contempt.

Reversed and remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3745-17T6