SYLLABUS

This syllabus is not part of the Court's opinion.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Court.  In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Antoine McCray; State v. Sahaile Gabourel** (A-75/76-18) (082744)

**Argued March 2, 2020 -- Decided July 20, 2020**

**RABNER, C.J., writing for the Court.**

In this appeal, the Court considers whether the State can prosecute contempt charges for a violation of a condition of pretrial release under the Criminal Justice Reform Act (CJRA or Act).

In April 2017, defendant Antoine McCray was arrested and charged with second-degree robbery.  A week later, the trial court released McCray subject to certain non-monetary conditions, including that he "not commit any offense during the period of release."  In August 2017, McCray was charged with various theft offenses for allegedly stealing a wallet and then making fraudulent purchases.  A grand jury indicted McCray for fourth-degree contempt for violating the trial court's order of pretrial release.  The sentencing judge dismissed the contempt indictment, noting that the CJRA does not provide for contempt prosecutions.

Defendant Sahaile Gabourel was arrested and charged with possession and distribution of heroin on July 10, 2018.  He was released subject to a number of conditions, including a 6 p.m. curfew.  Later that month, police officers arrested Gabourel when they saw him on a street corner at 8:09 p.m.  They found three Percocet pills in his pocket.  Gabourel was then charged with fourth-degree contempt -- for disobeying the trial court's release order and violating the curfew condition -- and with possession of Percocet.  After a hearing, the judge revoked the order of pretrial release and detained Gabourel.  The judge concluded, however, that the State may not prosecute a non-criminal violation of a term or condition of a pretrial release order by way of contempt.

The Appellate Division consolidated the cases and reversed in both.  458 N.J. Super. 473, 478 (App. Div. 2019).  The Court granted McCray's petition for certification, 238 N.J. 69 (2019), and Gabourel's motion for leave to appeal, 238 N.J. 51 (2019).

**HELD:** The history of the CJRA reveals the Legislature did not intend to authorize criminal contempt charges for violations of release conditions.  Beyond that, allowing such charges for all violations of conditions of release, no matter how minor, is at odds with the purpose and structure of the CJRA.  No-contact orders are treated differently,

however, because the CJRA did not modify settled law relating to them.  In State v. Gandhi, 201 N.J. 161 (2010), the Court held that violations of no-contact orders -- even if issued as part of a pretrial release order -- can serve as a basis for contempt charges.  That precedent remains firmly in place.  Because neither appeal here involved a violation of a no-contact order, the Court reverses the judgment of the Appellate Division and dismisses the contempt charges against both defendants.

1.  Before the CJRA's enactment, New Jersey's system of pretrial release relied heavily on the use of monetary bail.  The new law instead relies primarily on pretrial release, accompanied by non-monetary conditions, "to reasonably assure" that defendants will appear in court when required, will not endanger "the safety of any other person or the community," and "will not obstruct or attempt to obstruct the criminal justice process."  N.J.S.A. 2A:162-15.  N.J.S.A. 2A:162-17 outlines various non-monetary conditions a court may order.  And N.J.S.A. 2A:162-23 provides that, when a court releases a defendant on conditions, it must notify the defendant of those conditions and of the penalties for violating those conditions.  (pp. 11-13)

2.  Under N.J.S.A. 2A:162-24, if a court finds the defendant "has violated a restraining order or condition of release," or finds "probable cause to believe that the eligible defendant has committed a new crime while on release," the judge may not revoke the release and order detention without making findings like those required for ordering detention in the first instance.  Implicit in N.J.S.A. 2A:162-24 is the authority to impose additional conditions, short of detention, if a judge finds a defendant violated a condition of pretrial release but does not meet the standard for detention.  Consistent with the statute, Rule 3:26-2(d)(1) authorizes the court to revoke the defendant's release and enter an order of detention for a violation of a condition of pretrial release only if, upon a motion by the prosecution, the court finds that no combination of conditions would reasonably ensure against the risk of flight, danger, or obstruction.  Like N.J.S.A. 2A:162-23 and -24, the Rule does not mention contempt sanctions.  (pp. 13-14)

3.  In many ways, the Legislature patterned the CJRA after the federal Bail Reform Act of 1984 and the District of Columbia's statutory framework for pretrial detention, both of which expressly provide for contempt prosecutions to address violations of conditions of pretrial release.  The original text of the CJRA specifically permitted criminal contempt charges, like the federal and D.C. statutes.  In later reprints of the draft legislation, however, that language was removed.  The final version of the legislation, signed into law on August 11, 2014, does not include any reference to contempt.  L. 2014, c. 31 (codified at N.J.S.A. 2A:162-15 to -26).  (pp. 14-18)

4.  A number of sound reasons support the conclusion that the Legislature considered and rejected the possibility of contempt charges for violations of release conditions under the CJRA.  First, the Legislature amended the original bill to remove contempt of court proceedings as an option -- an indication of its intent.  Second, the Legislature chose to

part company with the federal Bail Reform Act and the D.C. Code when it struck language about contempt that appears in both of those laws. And the Joint Committee on Criminal Justice recommended a progressive approach to enforce compliance with conditions of pretrial release, with increasingly severe sanctions culminating in "the revocation of release and remand back into custody," but did not recommend criminal contempt charges for violations of release conditions. Section 24 of the CJRA follows the approach recommended by the Committee. (pp. 18-22)

5. That calibrated approach is at odds with the State's interpretation -- that the Act permits prosecutors to charge defendants with criminal contempt, a fourth-degree crime, for a violation of any release condition, even missing a single court appearance. To be sure, prosecutors would exercise discretion and could decline to bring charges for minor violations. But that broad-based proposition undermines the CJRA's goals. Similarly, the contempt statute's provision that "[a] person" who "purposely or knowingly disobeys a judicial order or protective order" can be found guilty of a crime, N.J.S.A. 2C:29-9(a), cannot be viewed in isolation. The Legislature considered and rejected contempt sanctions during the drafting stage of the CJRA. And N.J.S.A. 2C:29-9 states that a violation of an order entered under a series of listed statutes or circumstances may be subject to a contempt prosecution. Although the contempt statute has been amended four times since the enactment of the CJRA, the Legislature did not add the CJRA to that list. The Court notes that decisions holding contempt charges cannot be brought for non-criminal violations in other contexts do not undermine its conclusion here. (pp. 22-25)

6. No-contact orders under the CJRA are treated differently. Violations of such orders can be prosecuted under the contempt statute. The CJRA empowers judges to direct defendants on pretrial release to avoid all contact with an alleged victim of the crime and with all witnesses. Trial courts, of course, had that same authority before the CJRA went into effect. And prior case law established that no-contact orders entered as part of a bail proceeding could be enforced through criminal contempt charges. Gandhi, which the Court reviews in detail, plainly set forth that principle. 201 N.J. at 190-91. And nothing in the CJRA or its legislative history suggests the Legislature intended to overrule the prevailing law in Gandhi. As a result, defendants who violate no-contact orders that are included as conditions of release can still be prosecuted for contempt. That principle extends beyond domestic violence cases, as the Court explains. Neither defendant in this appeal was charged with violating a no-contact order, and the trial judges therefore properly dismissed their criminal contempt charges. (pp. 25-28)

**The judgment of the Appellate Division is REVERSED, and the contempt charges against defendants are DISMISSED.**

**JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in CHIEF JUSTICE RABNER's opinion.**

3

State of New Jersey,

Plaintiff-Respondent,

v.

Antoine McCray,

Defendant-Appellant.

_____

State of New Jersey,

Plaintiff-Respondent,

v.

Sahaile Gabourel,

Defendant-Appellant.

On certification to and appeal from
the Superior Court, Appellate Division,
whose opinion is reported at
458 N.J. Super. 473 (App. Div. 2019).

| Argued | Decided |
|---|---|
| March 2, 2020 | July 20, 2020 |

Laura B. Lasota, Assistant Deputy Public Defender,
argued the cause for appellants (Joseph E. Krakora,
Public Defender, attorney; Laura B. Lasota, of counsel
and on the briefs).

Claudia Joy Demitro, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Claudia J. Demitro, of counsel and on the briefs).

Alexander Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Alexander Shalom and Jeanne LoCicero, on the brief).

John McNamara, Jr., Chief Assistant Morris County Prosecutor, argued the cause for amicus curiae County Prosecutors Association of New Jersey (Francis A. Koch, President, attorney; John McNamara, Jr., of counsel and on the brief).

Michael R. Noveck argued the cause for amici curiae Partners for Women & Justice, New Jersey Coalition to End Domestic Violence, Essex County Family Justice Center, New Jersey Crime Victims' Law Center, and Rachel Coalition (Gibbons, attorneys; Michael R. Noveck and Lawrence S. Lustberg, on the brief).

Oleg Nekritin submitted a brief on behalf of amicus curiae Association of Criminal Defense Lawyers of New Jersey (Law Offices of Robert J. De Groot, attorneys; Oleg Nekritin, on the brief).

CHIEF JUSTICE RABNER delivered the opinion of the Court.

In this appeal, we consider whether the State can prosecute contempt charges for a violation of a condition of pretrial release under the Criminal Justice Reform Act (CJRA or Act).

2

In the two consolidated cases on appeal, both defendants were arrested and released on non-monetary conditions, pursuant to the CJRA. After allegedly violating those conditions, each defendant was charged with contempt, a fourth-degree offense that is contrary to N.J.S.A. 2C:29-9, for a violation of a court order.

Both trial court judges concluded the Act did not permit the State to pursue contempt charges. The Appellate Division reversed based on its review of the statute and its legislative history.

We largely agree with the trial court rulings. Although the plain language of the CJRA is silent on the issue, the Act's history reveals the Legislature did not intend to authorize criminal contempt charges for violations of release conditions. In fact, during the enactment process, the Legislature expressly removed the option of contempt proceedings from the original draft of the bill. In doing so, the Legislature parted company with other laws it looked to when it crafted the CJRA. Beyond that, allowing criminal contempt charges for all violations of conditions of release, no matter how minor, is at odds with the purpose and structure of the CJRA.

No-contact orders are treated differently, however, because the CJRA did not modify settled law relating to them. Judges regularly enter orders in domestic violence cases and other matters that bar defendants from contacting

3

witnesses, victims, and others. In <u>State v. Gandhi</u>, 201 N.J. 161 (2010), the Court held that violations of no-contact orders -- even if issued as part of a pretrial release order -- can serve as a basis for contempt charges. That precedent remains firmly in place.

Because neither appeal here involved a violation of a no-contact order, we reverse the judgment of the Appellate Division and dismiss the contempt charges against both defendants.

## I.

## A.

On April 16, 2017, defendant Antoine McCray was arrested and charged with second-degree robbery, in violation of N.J.S.A. 2C:15-1(a)(1). A week later, the trial court denied the State's motion for pretrial detention and released McCray subject to certain non-monetary conditions. One of the conditions was that he "not commit any offense during the period of release." On August 29, 2017, McCray was charged with various theft offenses for allegedly stealing a wallet out of a stroller and then making fraudulent purchases with the victim's credit cards.

A grand jury later indicted McCray for fourth-degree contempt, contrary to N.J.S.C. 2C:29-9(a), for violating the trial court's order of pretrial release. The grand jury also returned separate indictments that charged multiple theft

4

offenses. Pursuant to a plea agreement, McCray pled guilty to the contempt charge and to four counts of conspiracy to use a credit card fraudulently. The trial judge advised counsel that he would wait until sentencing to decide whether to accept the plea on the contempt charge. The court invited both counsel to submit written argument about the validity of the charge.

At sentencing, the same judge, the Honorable Pedro J. Jimenez, Jr., J.S.C., dismissed the contempt indictment. In a written opinion, the judge traced the history and purpose of the CJRA. He noted that the federal and District of Columbia statutes after which the CJRA was modeled both provide for contempt prosecutions, but the CJRA does not. Judge Jimenez also observed that the New Jersey Legislature removed language from earlier drafts that permitted contempt charges. He concluded the Act provided other means to address violations of release conditions, and cited to other statutory settings.

After dismissing the contempt indictment, Judge Jimenez sentenced McCray to four years in prison on the remaining counts to which he had pled guilty.

B.

Defendant Sahaile Gabourel was arrested and charged with seven counts of possession and distribution of heroin on July 10, 2018. The trial court denied the State's motion to detain Gabourel pretrial and released him subject

5

to a number of conditions. In particular, the judge ordered Gabourel to comply with a curfew and remain at home from 6 p.m. to 6 a.m.

On July 23, 2018, police officers who knew of the curfew arrested Gabourel when they saw him on a street corner at 8:09 p.m. The officers found three Percocet pills in Gabourel's pocket during a search incident to arrest. Gabourel was then charged in a two-count complaint with (1) fourth-degree contempt, contrary to N.J.S.A. 2C:29-9(a), for disobeying the trial court's release order and violating the curfew condition; and (2) possession of Percocet, contrary to N.J.S.A. 2C:35-10.5(a)(1).

After a hearing, the Honorable Paul M. DePascale, J.S.C., revoked the order of pretrial release and detained Gabourel, pursuant to N.J.S.A. 2A:162-24. Judge DePascale also concluded "the State may not prosecute a non-criminal violation of a term or condition of a pretrial release order by way of contempt." He succinctly recounted the Act's legislative history: contempt "was in the bill," "was removed, and then the bill was approved." The judge also analogized the situation to a violation of a term of probation, which cannot be prosecuted by contempt "[b]ecause there's another mechanism provided by the [probation] statute to deal with that." Judge DePascale accordingly dismissed the contempt charge against Gabourel.

6

C.

The Appellate Division consolidated the two cases and reversed in both of them. State v. McCray, 458 N.J. Super. 473, 478 (App. Div. 2019). The court first noted that the CJRA's plain language "does not preclude the State from charging a defendant with contempt." Id. at 487. Although language in an earlier draft that authorized contempt proceedings had been deleted from the bill, the court observed that no statement from a sponsor or a committee explained the reason why. Id. at 488-89. Without a statement or some proof of legislative intent, the Appellate Division stated,

> it is reasonable to conclude that the members of the Legislature believed there was no need to include a provision in the CJRA similar to the provisions in the federal [Bail Reform Act] and D.C. Code authorizing a criminal contempt prosecution for a violation of a pretrial release order. It is also reasonable to infer that the members of the Legislature believed a pretrial release order was a judicial order under N.J.S.A. 2C:29-9(a) and that statute sufficiently addressed the potential criminal consequences of a violation of a pretrial release order.

[Id. at 489.]

Relying in part on the reasoning in Gandhi, the court "conclude[d] that a pretrial release order is a 'judicial order'" within the meaning of the contempt statute and that "a defendant who . . . violates the conditions in the order may be charged with contempt under N.J.S.A. 2C:29-9(a)." Id. at 490. The court

7

found that defendants' reliance on State v. Williams, 234 N.J. Super. 84 (App. Div. 1989), and State in Interest of S.S., 367 N.J. Super. 400 (App. Div. 2004), was misplaced. McCray, 458 N.J. Super. at 492-93.

The Appellate Division also concluded defendants had sufficient notice they could be charged with contempt, and that the Double Jeopardy Clause did not bar McCray's prosecution for criminal contempt. Id. at 500.

We granted McCray's petition for certification, 238 N.J. 69 (2019), and Gabourel's motion for leave to appeal, 238 N.J. 51 (2019). We also granted leave to appear as amici curiae to the following organizations: the American Civil Liberties Union of New Jersey (ACLU); the Association of Criminal Defense Lawyers of New Jersey (ACDL); the County Prosecutors Association of New Jersey; and Partners for Women and Justice, the New Jersey Coalition to End Domestic Violence, Essex County Family Justice Center, New Jersey Crime Victims' Law Center, and Rachel Coalition, which filed a consolidated brief.

## II.

Defendants argue that the Appellate Division erred in concluding that violations of conditions of pretrial release are punishable by prosecutions for criminal contempt. They contend that the plain language of the CJRA and its legislative history demonstrate the Legislature rejected contempt as a remedy

8

for a violation of a release condition; that the CJRA contains its own provision for a violation of pretrial release; that Williams supports their position; that they did not receive proper notice; and, in McCray's case, that double jeopardy principles bar prosecutions for both the new crime and contempt. Defendants do not contest that violations of no-contact orders can be charged as contempt.

The ACDL's position largely aligns with defendants. In addition to the group's arguments about the language and history of the CJRA, the ACDL notes that defendants who violated bail conditions before the Act went into effect were not charged with contempt.

The State maintains the Appellate Division correctly concluded that defendants can be charged with contempt for violating a condition of pretrial release. The State argues that nothing in the CJRA precludes contempt prosecutions, which are consistent with the Act's purposes; that the plain language of the contempt statute allows charges to be brought for violations of release conditions; that differences between the CJRA and both the federal Bail Reform Act and the D.C. Code do not mean the Legislature intended to override the plain text of the contempt statute; that Gandhi supports its position; that defendants had adequate notice they could be charged with contempt; and that double jeopardy principles do not prevent McCray from

9

being charged with contempt and the underlying new offense he allegedly committed.

The County Prosecutors Association joins in the State's arguments. Among other points, the Association adds that defendants must necessarily rely on this principle to prevail: that the CJRA impliedly repealed the contempt statute. According to the Association, defendants cannot satisfy the high threshold needed to succeed with that claim.

The ACLU proposes what it calls a "workable middle ground" that would allow contempt charges for violations of no-contact orders but not other violations of release conditions. The organization echoes defendants' arguments about the language and history of the CJRA. The ACLU also contends that the Appellate Division's ruling would "widen[] the net of people incarcerated" and "hamper the efficiency of release hearings."

Partners for Women and Justice and related amici (Partners) argue that conditions designed to protect victims of domestic violence are a critical part of pretrial release. The groups submit that criminal contempt charges for violations of those conditions are consistent with existing case law and statutes. Partners urge the Court to reaffirm the holding in Gandhi.

## III.

We look to the language and history of the CJRA to determine whether it allows for criminal contempt charges when a defendant violates a condition of pretrial release.

## A.

The CJRA ushered in substantial changes to the State's criminal justice system. Before the law's enactment, "New Jersey's system of pretrial release relied heavily on the use of monetary bail 'to insure [the] presence of the accused at trial.'" State v. Robinson, 229 N.J. 44, 52 (2017) (alteration in original) (quoting State v. Johnson, 61 N.J. 351, 364 (1972)).

The new law instead relies primarily on pretrial release, accompanied by non-monetary conditions, "to reasonably assure" that defendants will appear in court when required, will not endanger "the safety of any other person or the community," and "will not obstruct or attempt to obstruct the criminal justice process." N.J.S.A. 2A:162-15. The Act "shall be liberally construed" to achieve those aims. Ibid. When a court finds by clear and convincing evidence that "no condition or combination of conditions" will realize those goals, the court, in response to a motion by the prosecutor, can enter an order to detain a defendant pending trial. Ibid.

Section 17 of the Act outlines various non-monetary conditions a court may order, including the following:

> (a) the eligible defendant shall not commit any offense during the period of release; (b) the eligible defendant shall avoid all contact with an alleged victim of the crime; (c) the eligible defendant shall avoid all contact with all witnesses who may testify concerning the offense that are named in the document authorizing the eligible defendant's release or in a subsequent court order; and (d) any one or more non-monetary conditions as set forth in paragraph (2) of this subsection.
>
> [N.J.S.A. 2A:162-17(b)(1)(a) to (d).]

The twelve additional non-monetary conditions in paragraph (b)(2) include requiring a defendant to "remain in the custody of a designated person"; to maintain or seek employment; to maintain or begin an educational program; to abide by travel restrictions; to comply with a curfew; to refrain from possessing a firearm or other dangerous weapon; and to refrain from drug use or the excessive use of alcohol. Id. at (b)(2).

When a court releases a defendant on conditions, it must notify the defendant of those conditions "in a manner sufficiently clear and specific to serve as a guide for the eligible defendant's conduct." N.J.S.A. 2A:162-23(a)(1)(a). In addition, the court shall alert the defendant to "the penalties for . . . violating a condition of release, which may include the immediate issuance of" an arrest warrant. Id. at (a)(1)(b).

12

Section 23 adds that "[t]he failure of the court to notify the eligible defendant of any penalty or consequence for violating a condition of release . . . shall not preclude any remedy authorized under the law for any violation committed by the eligible defendant." Id. at (a)(1).

If a court finds the defendant "has violated a restraining order or condition of release," or finds "probable cause to believe that the eligible defendant has committed a new crime while on release," the judge

> may not revoke the eligible defendant's release and order that the eligible defendant be detained pending trial unless the court, after considering all relevant circumstances including but not limited to the nature and seriousness of the violation or criminal act committed, finds clear and convincing evidence that no monetary bail, non-monetary conditions of release or combination of monetary bail and conditions would reasonably assure the eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, or that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process.
>
> [N.J.S.A. 2A:162-24.]

Implicit in that language is the authority to impose additional conditions, short of detention, if a judge finds a defendant violated a condition of pretrial release but does not meet the standard for detention.

Neither section 23 nor 24 of the Act addresses whether prosecutors may pursue contempt charges for a violation of a release condition.

13

Under Rule 3:26-2(c), judges have the authority to set new conditions of release on their own motion, or a motion by the prosecution, when "a material change in circumstance . . . justifies a change in conditions." R. 3:26-2(c)(2). Consistent with the statute, Rule 3:26-2(d)(1) authorizes the court to revoke the defendant's release and enter an order of detention for a violation of a condition of pretrial release only if, upon a motion by the prosecution, the court finds that no combination of conditions would reasonably ensure against the risk of flight, danger, or obstruction. Like the statute, the Rule does not mention contempt sanctions.

### B.

To interpret the meaning and scope of a statute, we look for the Legislature's intent. Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 540-41 (2012). We start with "the statute's plain language, which is typically the best indicator of intent." In re T.B., 236 N.J. 262, 274 (2019) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). If the language is clear, our task is complete. Ibid. Here, the CJRA neither mentions contempt as a possible sanction for a violation of a condition of release nor authorizes prosecutors to pursue contempt charges.

Because the text of the statute is silent as to whether contempt charges can be brought for violations of pretrial release, we turn to the Act's legislative

14

history for guidance.  See Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004); Burns v. Belafsky, 166 N.J. 466, 473 (2001).  That history is revealing.

1.

In many ways, the Legislature patterned the CJRA after the federal Bail Reform Act of 1984, 18 U.S.C. §§ 3141 to 3156, and the District of Columbia's statutory framework for pretrial detention, D.C. Code §§ 23-1321 to -1333.  Robinson, 229 N.J. at 56.  Both laws expressly provide for contempt prosecutions to address violations of conditions of pretrial release.

A section of the Federal Bail Reform Act, 18 U.S.C. § 3148(a), provides that "[a] person who has been released pursuant to the provisions of [18 U.S.C. § 3142], and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court."  The court can commence a prosecution for contempt under 18 U.S.C. § 401.  18 U.S.C. § 3148(c).  Willful disobedience of a court order that also constitutes a criminal offense against the United States or a state can be prosecuted under 18 U.S.C. § 402.  Richmond Black Police Officers Assoc. v. Richmond, 548 F.2d 123, 127 n.3 (4th Cir. 1977).

The District of Columbia's Code similarly provides that "[a] person who has been conditionally released pursuant to [the D.C. Code] and who has

15

violated a condition of release shall be subject to revocation of release, an order of detention, including an order of temporary detention . . . and prosecution for contempt of court." D.C. Code § 23-1329(a). Either the court or the prosecution can initiate a contempt proceeding. Id. at (c).

2.

The original text of the CJRA, introduced in both the Assembly and the Senate in January 2014, specifically referred to criminal contempt. The first section of the original draft bill, as introduced in both chambers, stated that the new law

> shall be liberally construed to effectuate the purpose of relying upon contempt of court proceedings or criminal sanctions instead of financial loss to ensure the appearance of the defendant, that the defendant will not pose a danger to any person or the community, and that the defendant will comply with all conditions of bail.
>
> [S. 946/A. 1910, § 1 (Jan. 2014) (emphasis added).]

The draft bill also included the following provision:

> In addition to revocation of release as authorized by this section, a violation of a condition of pretrial release . . . may subject the defendant to civil contempt, criminal contempt, forfeiture of bail, or any combination of these sanctions and any other sanctions authorized by law.
>
> [Id. § 9(c) (emphasis added).]

16

In addition, the sponsors' statements at the end of the original draft bills explain that "a defendant who violates pretrial release conditions may be subject to civil contempt, <u>criminal contempt</u>, forfeiture of bail, or any combination of those sanctions imposed by the court." <u>Sponsors' Statement to S. 946</u>/<u>A. 1910</u> (Jan. 2014) (emphasis added).

The Senate Judiciary Committee favorably reported on the draft bill on March 24, 2014. <u>S. Judiciary Comm. Statement to S. 946</u> (Mar. 24, 2014). In an accompanying statement, the Committee restated the above comment -- "a defendant who violates pretrial release conditions may be subject to civil contempt, criminal contempt, forfeiture of bail, or any combination of those sanctions imposed by the court." <u>Ibid.</u>

On June 5, 2014, the Senate Budget and Appropriations Committee favorably reported on the bill with committee amendments. <u>S. Budget & Appropriations Comm. Statement to S. 946</u> (June 5, 2014). The Committee's Statement, however, made no mention of contempt. <u>Ibid.</u> As to violations of conditions of pretrial release, the Statement noted that

> [w]henever a person was released, the court would notify the person of the conditions, if any, to which the release is subject, as well as the consequences for violating any such conditions, including the immediate issuance of a warrant for the person's arrest, and the criminal penalties for any such violation.

17

[Ibid.]

In the second and third reprints of the draft legislation, references to contempt appeared in bold-faced brackets along with the following notation: "Matter enclosed in bold-faced brackets . . . is not enacted and is intended to be omitted in the law." S. 946 (Second Reprint, June 12, 2014; Third Reprint, July 31, 2014); A. 1910 (Second Reprint, June 23, 2014; Third Reprint, August 4, 2014).

To be clear, the bill's "purpose of relying upon contempt of court proceedings or criminal sanctions" was removed, as was language that would "subject the defendant to civil contempt, criminal contempt, forfeiture of bail, or any combination of these sanctions and any other sanctions authorized by law" for a violation of a condition of pretrial release. Ibid.

The final version of the legislation, signed into law on August 11, 2014, does not include any reference to contempt. L. 2014, c. 31 (codified at N.J.S.A. 2A:162-15 to -26).

3.

The record is silent as to why the Legislature removed language about contempt during the enactment process. The Appellate Division inferred two reasons. First, the court thought it "reasonable to conclude" that legislators "believed there was no need to include" such a provision. McCray, 458 N.J.

18

Super. at 489.  Second, the court inferred "the Legislature believed a pretrial release order was a judicial order" covered by N.J.S.A. 2C:29-9(a) and thus subject to criminal contempt.  Ibid.

As to the first point, a stronger claim can be made that the Legislature considered and rejected the possibility of contempt charges for violations of release conditions under the CJRA.  A number of sound reasons support that conclusion.

First, "[c]ourts regularly understand the legislative intent behind a final enactment in terms of . . . changes proposed to the bill during the process of enactment."  2A Norman J. Singer & Shambie Singer, Sutherland Statutes and Statutory Construction § 48:18 (7th ed. 2017).  It is generally understood that "legislatures reject an amendment because they do not intend a bill to include the provisions in the rejected amendment. . . .  Conversely, legislatures generally adopt amendments because they intend to change the original bill."  Ibid.  Here, the Legislature amended the original bill to remove contempt of court proceedings as an option -- an indication of its intent.

This is not a case in which the CJRA impliedly repealed the applicability of the contempt statute.  The Legislature instead expressly removed contempt proceedings from the text of the Act.

19

Second, the Legislature chose to part company with the federal Bail Reform Act and the D.C. Code when it struck language about contempt that appears in both of those laws. As we noted in Robinson, "the Legislature looked to both laws among others when it framed New Jersey's reform measure." 229 N.J. at 56. "[I]f a legislature enacts a new law already in effect in another state under circumstances indicating it had the other state's statute in mind, the foreign statute is relevant to construe the domestic one." Sutherland § 51:6. Beyond that, in certain circumstances, "[l]egislation that is different from that common in other states, but on the same subject, typically manifests a legislative purpose to accomplish legal results different from those in other states." Ibid. Here, the Legislature pointedly chose a different path from other state laws it considered. Those laws provided for contempt prosecutions, but the Legislature stripped that concept from the draft CJRA.

The legislative history is instructive in yet another way. The Court in Robinson recounted a series of steps leading up to the passage of the CJRA. Those steps included the Judiciary's establishment of the Joint Committee on Criminal Justice, which was comprised of representatives of all three branches of government. Robinson, 229 N.J. at 53. Months after the Committee issued its report in March 2014, many of its recommendations on the need for bail reform and a new speedy trial act were enacted into law. Compare Report of

20

the Joint Comm. on Criminal Justice 8-10 (Mar. 10, 2014), https://www.

njcourts.gov/courts/assets/criminal/finalreport3202014.pdf (JCCJ Report),

with N.J.S.A. 2A:162-15 to -26.

Among other issues, the Committee recommended a progressive

approach to enforce compliance with conditions of pretrial release.  JCCJ

Report at 65.  The Committee noted that minor violations could be addressed

with administrative sanctions, like additional contacts with a pretrial services

officer, and more serious violations might call for notifications to the court.

Ibid. (citing Pretrial Justice Institute, Pretrial Services Program

Implementation:  A Starter Kit; Vera Institute of Justice, Evidence-Based

Practices in Pretrial Screening and Supervision).  If progressively enforced

sanctions did not succeed, the Committee envisioned more severe sanctions

like "the revocation of release and remand back into custody."  Ibid.  The

Committee did not recommend criminal contempt charges for violations of

release conditions.

Section 24 of the CJRA follows that approach.  It allows for revocation

of release and an order of detention for a violation of a release condition only

if the State meets the requisite high standard:  a showing by clear and

convincing evidence that the defendant poses a significant risk of flight,

danger, or obstruction, which no combination of conditions can protect

against. N.J.S.A. 2A:162-24. In less serious situations, courts may impose additional conditions that are less restrictive than detention.

That calibrated approach is at odds with the State's interpretation -- that the Act permits prosecutors to charge defendants with criminal contempt, a fourth-degree crime, for a violation of any release condition. Under the State's reading of the law, for example, if a defendant missed a single court appearance, the State could charge the person with a crime of the fourth degree for violating a "court order."

To be sure, if prosecutors had the authority to prosecute every violation under the contempt statute, they would exercise discretion and could decline to bring charges for minor violations. But the broad-based proposition the State advances undermines the CJRA's goals. Once again, the law provides for progressive enforcement of violations of pretrial release conditions. Ibid. Viewed more broadly, the Act favors pretrial release on non-monetary conditions over the prior practice of holding poor defendants who posed minimal risk in custody. N.J.S.A. 2A:162-15; see also JCCJ Report. And the CJRA provides for detention only for high-risk defendants. N.J.S.A. 2A:162-18, -19. It is difficult to glean from those principles that the Legislature intended to allow contempt prosecutions for any and all violations of conditions of release, no matter how minor.

The State, as well as the Appellate Division, also relies on the language of the contempt statute for support: "A person" who "purposely or knowingly disobeys a judicial order or protective order" can be found guilty of a crime. N.J.S.A. 2C:29-9(a). Because an order of release is a court order, the State submits, a violation of the order is subject to contempt charges.

Viewed in isolation, the argument has some persuasive force. But we cannot ignore the legislative history recounted above. The Legislature considered and rejected contempt sanctions during the drafting stage, despite looking to other laws that embraced that approach.

We note as well that N.J.S.A. 2C:29-9 states that a violation of an order entered under any of the following statutes or circumstances may be subject to a contempt prosecution: the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35; the Sexual Assault Survivor Protection Act, N.J.S.A. 2C:14-13 to -21; the Extreme Risk Protective Order Act, N.J.S.A. 2C:58-20 to -32; and a restraining order based on a conviction for stalking or, in certain circumstances, an allegation of stalking, N.J.S.A. 2C:12-10.1, -10.2. N.J.S.A. 2C:29-9(b) to (e). Although the contempt statute has been amended four times since the enactment of the CJRA, the Legislature did not add the CJRA to that list. See L. 2015, c. 141, § 1 (eff. Nov. 9, 2015); L. 2015, c. 147, § 10 (eff.

23

May 7, 2016); L. 2016, c. 93, § 3 (eff. Jan. 9, 2017); L. 2018, c. 35, § 12 (eff. Sept. 1, 2019).

Because we rely heavily on language and legislative history that is particular to the CJRA, we need not consider case law from other contexts at length.  In Williams, the Appellate Division focused on the probation statute and concluded that "[c]ontempt of court should not be superimposed as an additional remedy in a probation violation setting if the act that occasions the violation itself is not otherwise criminal."  234 N.J. Super. at 91.

In S.S., the Appellate Division held "it is contrary to the legislative intent expressed in the New Jersey Code of Juvenile Justice, and unjustified under existing statutory and common law, for a juvenile status offender to be adjudicated delinquent" for contempt for acts that do not violate the criminal code.  367 N.J. Super. at 402.  The court emphasized "the overriding goal of the juvenile justice system is rehabilitation, not punishment."  Id. at 407.  This Court affirmed for substantially the same reasons.  State in Interest of S.S., 183 N.J. 20, 21-22 (2005).

In both rulings, the Appellate Division discussed remedies other than contempt under the respective statutory schemes.  See Williams, 234 N.J. Super. at 90-91 (revocation of probation and resentencing under N.J.S.A.

2C:45-3(a)); S.S., 367 N.J. Super. at 409-10 (enforcement of litigant's rights under N.J.S.A. 2A:4A-86).

To the extent the analysis in those cases applies here, it does not undermine our conclusion.

C.

No-contact orders under the CJRA are treated differently. Violations of such orders can be prosecuted under the contempt statute.

The CJRA empowers judges to direct defendants on pretrial release to "avoid all contact with an alleged victim of the crime" and "with all witnesses." N.J.S.A. 2A:162-17(b)(1)(b), (b)(1)(c). Trial courts, of course, had that same authority before the CJRA went into effect. And prior case law established that no-contact orders entered as part of a bail proceeding could be enforced through criminal contempt charges. See Gandhi, 201 N.J. at 190.

Gandhi, decided by this Court in 2010, plainly set forth that principle. Id. at 190-91. In that case, the defendant was obsessed with a woman and repeatedly violated judicial no-contact orders. After a harassment complaint was filed against him in municipal court and the judge directed him not to have any contact with the victim, he showed up at the young woman's home. Id. at 171-72. His conduct prompted another harassment complaint, after which he again violated the court's order by telephoning the family residence and

25

showing up there.  Id. at 172.  The police arrested him, and a municipal court judge set bail the next day with the following condition:  "no victim contact[,] no return to scene."  Id. at 173.

While on release, the defendant "resumed sending sexually explicit and physically threatening messages to" the victim by mail.  Ibid.  Bail was revoked, he was jailed, and a judge increased his bail and expanded the no-contact order.  Ibid.  The defendant then sent the victim 142 pages of handwritten letters with graphic and disturbing content.  Ibid.

Ultimately, a grand jury indicted the defendant for stalking as well as multiple counts of contempt for violating the court orders.  Id. at 173-74.  A jury convicted him, and the violations of no-contact orders provided a basis to elevate a stalking conviction to a third-degree offense.  Id. at 174.

Among other arguments on appeal, the defendant claimed that violations of bail orders that contained no-contact provisions could lead only to revocation and forfeiture of his bail, not contempt charges.  Id. at 188.  The Court disagreed.  It explained that "[t]he no-contact orders in defendant's bail orders did not lose their character as judicial no-contact orders merely because bail consequences could attach for their violation."  Id. at 190.  The Court found that the defendant's "flagrant violation" of the judicial no-contact orders

26

provided an adequate basis to elevate a stalking charge and to support criminal contempt charges.  Id. at 190-91.

Courts "presume that the Legislature is familiar with existing case law." Great Atl. & Pac. Tea Co. v. Borough of Point Pleasant, 137 N.J. 136, 148 (1994); see also Johnson v. Scaccetti, 192 N.J. 256, 276 (2007) ("A well-established canon of statutory interpretation is that the Legislature 'is presumed to be aware of judicial construction of its enactments.'" (quoting DiProspero, 183 N.J. at 494)).  And nothing in the CJRA or its legislative history suggests the Legislature intended to overrule the prevailing law in Gandhi.  As a result, defendants who violate no-contact orders that are included as conditions of release can still be prosecuted for contempt.

That principle extends beyond domestic violence cases.  It applies to any order not to contact a victim or witness in domestic violence, stalking, harassment, or other matters.  In addition, as noted earlier, the contempt statute specifically provides for contempt prosecutions for violations of the Prevention of Domestic Violence Act, Sexual Assault Survivor Protection Act, Extreme Risk Protective Order Act, and restraining orders based on a conviction for stalking, or an allegation of stalking in certain circumstances. N.J.S.A. 2C:29-9(b) to (e).

## IV.

Neither defendant in this appeal was charged with violating a no-contact order. Defendant McCray allegedly committed theft and credit card related fraud in violation of his release conditions; defendant Gabourel allegedly violated a curfew provision in his release order. Because those allegations did not provide a basis for criminal contempt charges, the trial judges properly dismissed them. Our ruling does not affect the other offenses charged.

In light of the dismissal of the contempt charges, we need not address defendants' remaining arguments about lack of notice or double jeopardy.

## V.

For the reasons outlined above, we reverse the judgment of the Appellate Division. We reinstate the orders of the trial court dismissing the contempt charges against both defendants.

JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in CHIEF JUSTICE RABNER's opinion.

28